UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Symbria, Inc. et al.,

Plaintiffs,

v.                                          Case No. 20-cv-4084

John Callen, et al.,                        Judge Mary M. Rowland

Defendants.

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on multiple pending motions. Plaintiffs move to strike the various Defendants' affirmative defenses [495]; [497]; [499]; [501]. Plaintiffs also move to strike Defendants Dilmas' and Chicago Rehab's counterclaims [493] and to dismiss Defendant UMHS' counterclaims [491]. In addition, Plaintiffs move for leave to file a fourth amended complaint [542]. For the reasons explained below, this Court grants Plaintiffs leave to file a fourth amended complaint [542], grants Plaintiffs' motion to strike Dilmas' and Chicago Rehab's counterclaims [493], and grants Plaintiffs' motion to dismiss UMHS' counterclaims [491]. In light of the fourth amended complaint, this Court denies without prejudice Plaintiffs' motions to strike the Defendants' affirmative defenses [495]; [497]; [499]; [501].

## I.   Background

The Court presumes familiarity with its motion to dismiss opinion [402] and thus briefly only revisits the procedural history and facts in this case. Plaintiffs Symbria, Inc., Symbria Rehab, Inc., Alliance Rehab of Connecticut, LLC, Alliance

1

Rehab HVA, LLC, GreatBanc Trust Company, and the Symbria, Inc. Employee Stock Ownership Trust claim that their former corporate officers and employees formed a venture to compete against them in the field of rehabilitation and wellness services to senior living and skilled nursing facilities. They brought a sixteen-count third amended complaint alleging that Defendants violated a host of federal and state laws. Specifically, the third amended complaint brought the following claims: violation of the federal Defend Trade Secrets Act on behalf of Symbria, Symbria Rehab, Alliance Connecticut, and Alliance HVA against all Defendants (Count I); violation of the Illinois Trade Secrets Act by Symbria, Symbria Rehab, Alliance Connecticut, and Alliance HVA against all Defendants (Count II); breach of the SPA by Symbria, GreatBanc, and the Symbria ESOP trust against UMHS (Count III); breach of employment contract by Symbria, Symbria Rehab, Alliance Connecticut, and Alliance HVA against Callen (Count IV); breach of contract by Symbia Rehab against Dilmas (Count V); breach of fiduciary duty by Symbria Rehab against Dilmas (Count VI); tortious interference with the SPA by Symbria against Callen and the MedRehab Entities (Count VII); aiding and abetting Dilmas' breach of fiduciary duty by Symbria Rehab against Callen, the MedRehab Entities, and UMHS (Count VIII); tortious interference with prospective business expectancy by Symbria Rehab, Alliance Connecticut, and Alliance HVA against Callen and the MedRehab Entities (Count IX); breach of fiduciary duty by Symbria Rehab against Callen (Count X); tortious interference with the Symbria Rehab-Dilmas Employment contract by Symbria Rehab against Callen, the MedRehab Entities, and UMHS (Count XI); copyright

infringement by Symbria against all Defendants (Count XII); breach of contract by Symbria Rehab against Irvine (Count XIII); tortious interference with the Symbria Rehab-Irvine employment contract by Symbria Rehab against Callen, the MedRehab Entities, and UMHS (Count XIV); breach of fiduciary duty by Symbria Rehab against Irvine (Count XV); and aiding and abetting Irvine's breach of fiduciary duty by Symbria Rehab against Callen, the MedRehab Entities, and UMHS (Count XVI). [164] ¶¶ 191–346.

After Defendants moved to dismiss, the Court denied their motions in large part. As a result of the rulings, the Court struck Plaintiffs' request for statutory damages and attorney fees in Count XII, Plaintiffs' claim for copyright infringement; dismissed Counts V (breach of contract against Dilmas), VIII (aiding and abetting Dilmas' breach of fiduciary duty by Symbria Rehab against Callen, the MedRehab Entities, and UMHS), and XVI (aiding and abetting Irvine's breach of fiduciary duty by Symbria Rehab against Callen, the MedRehab Entities, and UMHS) with prejudice. Because Plaintiffs settled with Irvine during the pendency of the motions to dismiss, the Court also dismissed Counts XIII and XVI with prejudice.

After the Court's ruling, the various Defendants filed their answers and affirmative defenses; some Defendants also filed counterclaims. In response, Plaintiffs have moved to strike their affirmative defenses. *See* [495] (motion to strike UMHS' affirmative defenses); [497] (motion to strike Chicago Rehab's affirmative defenses); [499] (motion to strike Callen and the MedRehab Defendants' affirmative defenses); [501] (motion to strike Dilmas' affirmative defenses). Plaintiffs have also

3

moved to strike Dilmas and Chicago Rehab's counterclaims [493], and to dismiss UMHS' counterclaims [491]. Additionally, after moving to strike and dismiss Defendants' pleadings, Plaintiffs moved for leave to amend their complaint [542]. These motions are all ripe for consideration.[1] This Court rules as follows below.

## II. Plaintiffs' Motion for Leave to File Fourth Amended Complaint

The Court first considers Plaintiffs' motion for leave to file a fourth amended complaint [542].

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (noting that Rule 15(a)(2) takes a "liberal approach to granting leave to amend") (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018)). Courts may, however, deny leave to amend "where there is a good reason to do so: 'futility, undue delay, prejudice, or bad faith.'" *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020) (quoting *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 417 (7th Cir. 2019)). Ultimately, the "decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

Plaintiffs' proposed fourth amended complaint makes several deletions and additions. Plaintiffs propose deleting the counts this Court dismissed in its motion to

---

[1] Even more recently, UMHS moved for leave to file a third-party complaint [591]. That motion is not yet briefed, so the Court will reserve ruling.

dismiss order and the allegations pertinent to the Defendant with whom Plaintiffs have settled, Christine Irvine. Defendants do not oppose these deletions. They do, however, oppose Plaintiffs' proposed additions of: (1) Joint & Neuro Chicago as a new party; (2) four new claims against the MedRehab Entities and UMHS—two revised tortious interference with contract claims based on alleged interference with Dilmas' and Irvine's at-will employment contracts (proposed Counts IX and XI) and new claims for tortious interference with Callen's severance agreement (proposed Count XII) and for abetting Callen's breach of fiduciary duty (proposed Count XIII); and (3) additional alter ego allegations. *See* [542-1] ¶¶ 184–93, 279–91, 314–21, 322–29, 330–39. Defendants do not argue futility. Instead, they urge this Court to deny the proposed additions based on prejudice and undue delay. For the following reasons, this Court will allow amendment.

Defendants argue that Plaintiffs delayed in adding Joint & Neuro Chicago as a party because they could have discovered at the outset of the litigation that it was a separate party from another named Defendant, Joint & Neuro, through public records available through the Illinois Secretary of State's office. Defendant also points to various documents it produced during discovery in 2020 and early 2021 that demonstrated Joint & Neuro Chicago was a separate entity. But Plaintiffs represent that it was not until February 2022, through additional discovery, that they realized this fact. This Court has no reason to doubt the veracity of Plaintiffs' representations, particularly given the similarities in the names between the two entities. Thus, this Court does not find that Plaintiffs unduly delayed in requesting amendment to add

5

Joint & Neuro Chicago. Even if Plaintiffs delayed, delay by "itself is normally an insufficient reason to deny a motion for leave to amend." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). Rather, the "underlying concern is the prejudice to the defendant rather than simple passage of time." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016) (quoting *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014)). Defendants here articulate no specific prejudice from the addition of Joint & Neuro Chicago. They instead argue that the claims Plaintiffs intend to assert against Joint & Neuro Chicago—trade secret misappropriation, copyright infringement, tortious interference, and aiding and abetting breaches of fiduciary duty—appear to have "occurred long before Joint & Neuro Chicago was even formed on October 18, 2019." [556] at 7. If true, Joint & Neuro Chicago may ultimately be found not liable. This is an argument Defendants are free to raise on summary judgment or at trial, but it does not establish prejudice in the context of a motion to amend a pleading.

This Court will also allow Plaintiffs to add its new proposed tortious interference with contract claims based on contracts with Dilmas and Irvine. The Court dismissed Plaintiffs' prior breach of contract claim against Dilmas because they alleged no viable employment contract based on an employee handbook. [402] at 44. Plaintiffs seek leave to add these new claims (proposed Counts IX and XI) in response to this Court's motion to dismiss opinion. They explain that these new proposed tortious interference claims are designed to address the fact that this Court dismissed Dilmas' and Irvine's breach of contract claims; specifically, these proposed claims are

6

based on a *new* theory of breach of contract—namely, that some Defendants tortiously interfered with Dilmas and Irvine's at-will employment contracts and with Dilmas' resignation agreement. [542] at 6.

Again, Defendants do not argue futility, but rather delay and prejudice. But there is no delay because Plaintiffs moved to cure their allegations only a few months after this Court issued its motion to dismiss opinion. [402]; [542]. The Seventh Circuit has emphasized that leave to amend "is especially advisable when such permission is sought after the dismissal of the first complaint" because a plaintiff should be "given every opportunity to cure a formal defect in his pleading." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). Moreover, Defendants do not articulate any specific prejudice resulting from allowing the amendment.

Plaintiff's proposed additional claims of tortious interference with Callen's severance agreement and aiding and abetting Callen's breach of his fiduciary duty present a slightly closer call. Plaintiffs do not identify any new discovery that gives rise to these claims, nor do they argue that these new claims are designed to address this Court's motion to dismiss opinion. Rather, as Defendants argue, Plaintiffs could have brought these claims earlier, as they are derivative of claims that Plaintiffs already alleged in the third amended complaint—breach of Callen's severance agreement and breach of fiduciary duty against Callen. Nonetheless, this Court again heeds the Seventh Circuit's admonition that, given Rule 15's liberal amendment

standard, delay by "itself is normally an insufficient reason to deny a motion for leave to amend," *Dubicz*, 377 F.3d at 793, and evaluates whether Defendants demonstrate prejudice. Defendants argue generally that they would have to undertake additional discovery due to the widening of the scope of the allegations in this case. [556] at 7. But Plaintiffs counter that they will not seek additional written discovery. [560] at 4. Further, this Court does not believe that discovery will greatly expand by allowing amendment. As stated above, these two new claims are derivative of the original claims against Callen. And all of the claims in the proposed fourth amended complaint are directed at the same general conduct—Defendants' alleged pilfering of employees and data following a bad business break-up. Thus, much of the discovery conducted to date will be relevant to these new claims. Defendants also claim prejudice from the potential additional cost of moving to dismiss these claims. [556] at 7. This argument strikes the Court as disingenuous, as Defendants do not object to the amendment based on futility.

Finally, this Court will also allow Plaintiffs to add new alter ego allegations. Plaintiffs represent that the new allegations derive from facts recently learned in discovery and that they will not seek additional written discovery from Defendants targeted at these allegations. [542] at 6; [540] at 4. Again, Defendants show neither undue delay nor prejudice. Thus, amendment is appropriate.

For these reasons, this Court grants Plaintiffs' motion for leave to file their fourth amended complaint [542]. In light of the new amendment, Plaintiffs' motions to strike Defendants' affirmative defenses [495]; [497]; [499]; [501] are denied without

prejudice, as Defendants may wish to revise their affirmative defenses in response to the new allegations.

## III. Plaintiffs' Motion to Strike Dilmas' and Chicago Rehab's Counterclaims

This Court next considers Plaintiffs' motion to strike Dilmas' and Chicago Rehab's Counterclaims. [473].

Among other claims, Plaintiffs assert violations of the Illinois Trade Secrets Act (ITSA) and copyright infringement against these Defendants. [175] ¶¶ 250, 296. Dilmas asserts a single counterclaim against Plaintiffs, alleging that to "the extent Dilmas prevails on Plaintiffs' or Symbria's claim for copyright infringement, Dilmas is entitled to recover his attorneys' fees and costs as a 'prevailing party' pursuant to 17 U.S.C. § 505." [446] at 81. Similarly, Chicago Rehab's counterclaim seeks prevailing party fees should it prevail on the ITSA and/or Copyright claims. [470] at 130–31.

Plaintiffs move to strike these counterclaims, arguing that they are not properly pled as counterclaims and "add nothing new to the dispute" because this Court already is tasked with determining the parties' entitlement to fees and costs under the two Acts as part of Plaintiffs' claims. [494] at 5. This Court agrees. The Copyright Act permits this Court to "allow the recovery of full costs" and "reasonable attorney's fee" to the "prevailing party" regardless of whether the defendant has asserted a counterclaim. 17 U.S.C. § 505; *Malibu Media, LLC v. Redacted*, 705 F. App'x 402, 407 (6th Cir. 2017) (affirming the district court's dismissal of a counterclaim requesting attorney's fees to the prevailing party in a copyright

9

infringement action). The ITSA allows this Court to award reasonable attorney's fees "to the prevailing party" if it finds a "claim of misappropriation is made in bad faith," a "motion to terminate an injunction is made or resisted in bad faith," or "willful and malicious misappropriation exists." 765 Ill. Comp. Stat. 1065/5. The ITSA, like the Copyright Act, does not condition prevailing party fees on the defendant's assertion of a counterclaim. *See id.* These counterclaims thus are redundant of Plaintiffs' affirmative Copyright Act and ITSA claims.

Defendants argue that the counterclaims seek to preserve their right to recover fees and costs in the event that Plaintiffs voluntarily dismiss their claims before an adjudication on the merits. [523] at 6. As another court has explained, dismissing counterclaims in copyright suits can be "problematic" as "doing so gives the plaintiff unilateral control over whether the court reaches the merits of the case because the plaintiff can voluntarily dismiss the claims at any time." *Square One Ent. Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, No. 20 C 5685, 2021 WL 1253450, at *2 (N.D. Ill. Apr. 5, 2021). This "gives the plaintiff undue leverage in settlement negotiations if an agreement regarding validity of the copyright, or a judgment or acknowledgement regarding the defendant's conduct, is important to the defendant." *Id.* This is the very logic employed in *Malibu Media, LLC v. Khan*, the case Defendants primarily rely upon. No. 18 C 3028, 2019 WL 1382082, at *2 (N.D. Ill. Mar. 27, 2019). There, the court declined to dismiss the defendant's declaratory judgment counterclaim for non-infringement, explaining that there "is tremendous pressure for a defendant to settle, even if the case is meritless"

and that the counterclaim "will offer protection should [the defendant] choose to challenge [the plaintiff]'s case on the merits instead of submitting to settlement." *Id.*

Here, in contrast to *Khan*, Defendants do not bring declaratory judgment actions of non-infringement or non-misappropriation. Their "counterclaims" instead simply deny the veracity of Plaintiffs' allegations and request fees to the extent they prevail. *See* [446] at 81; [470] at 131. Thus, Defendants add nothing new in their counterclaims; they simply "state the opposite of the complaint." *LKQ Corp. v. Rutledge*, No. 21 C 3022, 2022 WL 1720590, at *6 (N.D. Ill. May 27, 2022) (quotation omitted). Moreover, the concerns animating *Khan* are not present here. *Khan* is one of many lawsuits brought by Malibu Media, a distributor of pornographic videos, which follow a similar procedural pattern:

> plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

*Malibu Media, LLC v. Doe*, No. C 15-04441 WHA, 2016 WL 3383758, at *2 (N.D. Cal. June 20, 2016) (quoting *Malibu Media, LLC v. John Does 1 through 10*, 12-3632, 2012 WL 53832304, at *3–4 (C.D. Cal. June 27, 2012)). Inherent in these cases is the "potential for abuse" because defendants feel pressure to settle even meritless cases due to their potential damages exposure coupled with the taboo nature of the subject matter. *Id.* at *3. Accordingly, it makes sense to allow defendants in these cases to assert counterclaims seeking prevailing party costs and fees, permitting the

defendant (who is typically unrepresented) to seek adjudication on the merits and clear his or her name if Malibu Media seeks to voluntarily dismiss its own claims. *See id.*; *see also Khan*, 2019 WL 1382082, at *1. In contrast, here, there is not the potential for abuse discussed in the above cases. There is no indication that Plaintiffs brought this case to extort a quick settlement. Rather, this case has remained ongoing for years and Plaintiffs have defeated motions to dismiss their ITSA and Copyright Act claims. Plaintiffs appear intent on seeing their claims through to an adjudication on the merits, barring a mutually agreeable settlement among the parties. Thus, this Court finds it unnecessary to allow Defendants to assert their "counterclaims" for the purpose of preventing an abuse of process.

The Federal Rules of Civil Procedure offer another layer of protection to Defendants. That is, if Plaintiffs voluntarily dismissed the case, they must do so under Rule 41(a)(2), which provides that an "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Rule 41(a)(2) allows this Court to condition a voluntary dismissal on whatever terms and conditions it "deems necessary to offset possible prejudice defendant may otherwise suffer from plaintiff dismissing his complaint with prejudice." *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994). Pursuant to that rule, voluntary dismissals without prejudice "are usually granted only if the plaintiff pays expenses incurred by the defendant in defending the suit up to that point" to "offset the possible prejudice defendant may otherwise suffer from plaintiff dismissing his complaint without prejudice." *Babcock v. McDaniel*, 148 F.3d 797, 799 (7th Cir. 1998) (quotation

omitted). Thus, Rule 41(a)(2) provides a mechanism under which Defendants can seek their fees and costs should Plaintiffs voluntarily dismiss the claims without prejudice. Additionally, it is well-established that a voluntary dismissal with prejudice under Rule 41(a)(2) "makes the defendant the prevailing party for purposes of an award of attorney's fees under § 505." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). "This is no less true when a case is dismissed because the plaintiff 'threw in the towel'—that is, where the dismissal is on the plaintiff's own motion." *Id.* (quoting *Riviera Distributors, Inc. v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008)).

For the foregoing reasons, this Court grants Plaintiffs' motion to strike Dilmas and Chicago Rehab's counterclaims [473]. Those counterclaims, appearing in [446] and [470], are hereby stricken.

## IV. Plaintiffs' Motion to Dismiss UMHS' Counterclaims

This Court next considers Plaintiffs' motion to dismiss UMHS' counterclaims [491]. In its counterclaims, UMHS asserts claims for breach of contract (Count I) and indemnification (Count II). Both counts are directed at all Plaintiffs, defined as Symbria, Symbria Rehab, Alliance Connecticut, Alliance HVA, GreatBanc, and Symbria ESOP Trust. [467] at 138. A smaller subset of the Plaintiffs—Symbria, Symbria Rehab, Alliance Connecticut, and Alliance HVA—are referred to as "Symbria and Affiliates" in the collective. *Id.*

UMHS asserts that on October 31, 2015, it entered into a stock purchase agreement (SPA) with other sellers and Symbria, identified as the Company in the SPA. [467] at 137. Pursuant to the SPA, UMHS sold its stock in Symbria for certain

consideration. *Id.* at 138. Article 4.3(w) of the SPA states as follows: "**Solvency.** The Company [Symbria] will be able to pay its debts incurred in the ordinary course of business after giving effect to the financing incurred by the Company in connection with the transaction." *Id.* at 139. Article 4.3(x) provides:

> **No Material Omission.** The representations and warranties of the Company in this Agreement, and all representations, warranties, and statements of the Company Group contained in any schedule, financial statement, exhibit, list or document delivered pursuant to this Agreement do not omit to state a material fact necessary in order to make the representations, warranties and statements misleading.

*Id.* UMHS alleges that Plaintiffs "have financial statements and disclosure statements that would indicate solvency or lack of solvency" but "failed to provide supporting financial documentation to support Plaintiffs solvency to UMHS." *Id.* UMHS asserts that this constitutes a breach of the SPA. *Id.*

UMHS also alleges that Plaintiffs breached Article 5.9(b) of the SPA, which provides in pertinent part:

> **Post-Closing Covenants.** The Company will use its best efforts to have the Management Group commit to renew the terms of their respective employment agreements on an annual or longer basis after the fifth anniversary of the Closing, until the Subordinated Notes and Warrants are no longer outstanding.

*Id.* at 140. John Callen is a member of the Management Group. *Id.* According to UMHS, on January 12, 2017, Symbria terminated Callen's employment in violation of Article 5.9(b) of the SPA. *Id.*

In support of its indemnification counterclaim in Count II, UMHS alleges that the ESOP Trustee has express indemnification obligations to UMHS under the SPA.

*Id.* at 141. The SPA provides as follows, with regard to Symbria and Affiliates' breaches of the SPA:

> The ESOP Trustee, solely in its capacity as ESOP Trustee, shall indemnify, defend, and hold harmless, to the extent permitted by ERISA, each of Sellers and the Company against and from all Damages sustained or incurred by Sellers or the Company resulting from or arising out of tort by virtue of (a) any inaccuracy in or breach of the representations and warranties made by the ESOP Trust in this Agreement or in any Transition Document for the benefit of Sellers to the Company, or (b) the ESOP Trust's breach of any of the ESOP Trust's covenants or agreements contained in this Agreement or in any Transaction Document for the benefit of Sellers.

*Id.* UMHS claims it is entitled to a defense and indemnification in this matter pursuant to the SPA regarding the claims Plaintiffs brought against it for tortious interference with contract, copyright infringement, and breach of contract. *Id.* UMHS alleges that Plaintiffs have failed to fulfill the obligations, resulting in a breach of the SPA with UMHS. *Id.*

Plaintiffs move to dismiss both counts under Rule 12(b)(6). [491]. To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

15

Starting with Count I, the breach of contract claim, Plaintiffs argue that UMHS fails to state any claim for breach of the SPA against any Plaintiff. [492] at 3. This Court agrees that UMHS does not plausibly plead breaches of Section 4.3 or 5.9 against any Plaintiff. UMHS alleges that Plaintiffs are in breach of Sections 4.3(w) and (x) because they currently possess documents regarding the financial solvency of Symbria, but refuse to turn those documents over to UMHS. But Sections 4.3(w) and (x) concern representations and warranties regarding Symbria's solvency and the completeness of documentation in connection with the 2015 transaction, not continuing promises regarding solvency or documentation in the future. *See* [162-1] at 38. Indeed, Section 4.3(w) contains a covenant by Symbria that it "will be able to pay its debts . . . after giving effect to the financing [it incurs] in connection with the Transaction." *Id.* And Section 4.3(x) promises that the representations and warranties Symbria has given pursuant to the Agreement do not make omissions of material fact. *Id.* The plain language of these covenants[2] concern the adequacy of Symbria's representations about its solvency at the time of the transaction. They do not concern promises by Symbria to maintain solvency in the future nor to provide supporting documentation to UMHS of its solvency. Thus, it is not plausible for UMHS to allege that Plaintiffs have breached Section 4.3 by not handing over *current*

---

[2] Because the parties raise no conflict of law dispute, the Court applies Illinois law to UMHS' counterclaims. *See Bd. of Forensic*, 922 F.3d 827; *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (applying forum law where no party raised a conflict of law issue). Under Illinois law, courts "give effect to the plain and ordinary meaning of unambiguous" contract language. *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 37 F.4th 440, 443 (7th Cir. 2022).

16

financial statements and disclosure statements that support their solvency. *Contra* [467] at 139.

Nor does UMHS plausibly allege that any Plaintiff breached Section 5.9(b), which concerns Symbria's post-closing covenant to "use its best efforts to have the Management Group [including Callen] commit to renew the terms of their respective employment agreements on an annual or longer basis *after the fifth anniversary of the Closing*. . . ." [162-1] at 43 (emphasis added). The plain language of this provision contemplates Symbria using its best efforts to engage Callen to renew his employment, but only once Callen's agreement was due for renewal five years after the transaction closed. Here, Symbria could not have breached Section 5.9(b) because the SPA closed on October 31, 2015, [162-1] at 2; [175] ¶ 32, and Callen was terminated in July 2017, well before the fifth anniversary of the closing, [467] at 140. Symbria's contractual obligation to exercise best efforts to retain Callen thus was never even triggered under Section 5.9(b).

Recognizing these pleading deficiencies, UMHS raises an entirely new theory in its response brief. UMHS argues that under the SPA, UMHS sold its stock in exchange for subordinated promissory notes, warrants, and other promises. [519] at 4. According to UMHS, Symbria breached the SPA by failing to pay the subordinated promissory notes as required. *Id.* This theory of breach of contract appears nowhere in UMHS' counterclaim, however, and UMHS cannot use his response brief to amend his deficient claim. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (noting the "axiomatic rule that a

plaintiff may not amend his complaint in his response brief"); *see also, e.g., Maroon Soc'y v. Unison Consulting Inc.*, No. 19 C 05117, 2020 WL 5076688, at *12 (N.D. Ill. Aug. 26, 2020) ("Maroon cannot amend its pleading by way of response brief."). Accordingly, UMHS has failed to plead a cognizable breach of contract counterclaim. Its breach of contract counterclaim in Count I is dismissed.

The indemnification counterclaim in Count II is similarly deficient. UMHS bases its indemnification counterclaim on Section 7.2(a) of the SPA, which obligates the ESOP trustee to indemnify and defend UMHS from damages "result[ing] from or arising out of tort by virtue of (a) any inaccuracy in or breach of the representations and warranties *made by the ESOP Trust in this Agreement* or in any Transition Document for the benefit of Sellers to the Company," or "(b) the *ESOP Trust's breach* of any of the ESOP Trust's covenants or agreements contained in this Agreement or in any Transaction Document for the benefit of Sellers." [162-1] at 48 (emphasis added). By its plain language, the SPA requires a breach of some kind *by the ESOP Trust* for the ESOP trust's indemnification obligations to arise. *Id.* UMHS' counterclaims do not, however, allege any such breach by the ESOP Trust. *See generally* [467]. UMHS does not address this deficiency in its response. It instead argues, contrary to the plain language of the indemnification provision, that "the ESOP Trustee could be liable to UMHS in tort for inaccuracies or breaches of representations Symbria made in the ESOP Transaction documents." [519] at 6–7. Section 7.2(a), as discussed, does not contemplate indemnification for Symbria's

breaches, but rather for the ESOP Trust's own breaches. Thus, UMHS fails to plead a plausible indemnification counterclaim under the SPA. Count II is also dismissed.

## IV.  Conclusion

For the reasons explained above, this Court grants Plaintiffs' motion for leave to file a fourth amended complaint [542], grants Plaintiffs' motion to strike Dilmas' and Chicago Rehab's counterclaims [493], and grants Plaintiffs' motion to dismiss UMHS' counterclaims [491]. In light of the foregoing, this Court denies with prejudice Plaintiffs' motions to strike the Defendants' affirmative defenses [495]; [497]; [499]; [501]. Plaintiffs are directed to file the fourth amended complaint as a separate docket entry by November 17, 2022. Defendants shall answer by December 15, 2022. UMHS may file an amended counterclaim by December 15, 2022.

E N T E R:

Dated: November 14, 2022

_____
MARY M. ROWLAND
United States District Judge

19