**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SYMBRIA, INC., et al., | |
| Plaintiffs, | Case No. 1:20-cv-04084 |
| v. | Judge Mary M. Rowland |
| JOHN R. CALLEN, et al., | Magistrate Judge David M. Weisman |
| Defendants. | |

## <u>CHICAGO REHAB'S MOTION FOR DISCOVERY SANCTIONS</u>

Defendant Chicago Rehabilitation Collective PLLC ("Chicago Rehab") respectfully moves this Court under Federal Rule of Civil Procedure 37(b)(2)(A), Federal Rule of Civil Procedure 16(f) and the Court's inherent authority to assess appropriate sanctions against Plaintiffs Symbria, Inc., Symbria Rehab, Inc., Alliance Rehab of Connecticut, LLC, Alliance HVA, L.L.C., GreatBank Trust Company as trustee, and The Symbria, Inc. Stock Ownership Trust (collectively, "Symbria" or "Plaintiffs") for failure to comply with this Court's April 4, 2022 discovery order [Dkt. 504] (the "Discovery Order").[1]

## <u>INTRODUCTION</u>

Plaintiffs have failed and refused to comply with the Court's Discovery Order in the following respects:

- The Court ordered Plaintiffs to fully respond to Chicago Rehab Interrogatories 2 and 3 with respect to the trade secrets allegedly misappropriated by Chicago Rehab, noting that the information sought "is essential to the resolution of the claims before the district court" and "to understand the bases for plaintiffs' claims." Interrogatories 2 and 3 require each

---

[1] A copy of the Court's April 4, 2022 Discovery Order is attached hereto as <u>Exhibit A</u> for the Court's convenience.

Plaintiff claiming any misappropriation of a trade secret by Chicago Rehab to "specifically and separately identify each trade secret . . . CRC misappropriated"; "describe with specificity how CRC misappropriated each such trade secret and describe how CRC improperly used or disclosed each such trade secret"; "identify the individual who authored or otherwise created the trade secret material"; "identify the date or date range of creation of the trade secret material" and "identify all sources used, consulted, and/or relied upon to create or author the trade secret material."  Plaintiffs have not provided this information.  Indeed, Plaintiffs failed to specifically identify *any* of the misappropriated trade secrets (and consequently make no effort to identify which Plaintiff developed and owned any particular trade secret).  Instead, Plaintiffs merely provided a list of 121 documents which they claimed contain the misappropriated trade secrets (with perhaps multiple different trade secrets in each of the 121 documents), attempting to impose upon Chicago Rehab the impossible burden of trying to guess what information within those documents might constitute trade secret information.  After counsel met and conferred on these issues, Plaintiffs on December 27, 2022 provided an amended list of the same 121 documents, this time organized by 14 generic categories of document types, but still failing to identify the actual trade secrets allegedly misappropriated by Chicago Rehab.  Because Plaintiffs fail to identify the specific trade secrets or which Plaintiff developed and owns those trade secrets, Plaintiffs also fail to identify the date the specific trade secrets were created or the specific creators of the various separate trade secrets.  Plaintiffs instead provide some dates of creation (but mostly listing "various") and authors (again often listing "various") of the 121 documents containing those purported trade secrets, rather than the dates of creation and authors of the trade secrets themselves.  Plaintiffs also fail

to identify how *Chicago Rehab* misused any of the trade secrets, instead referencing misuse of some of the documents by some of the other Defendants.

- The Court also ordered Plaintiffs to fully respond to Chicago Rehab Interrogatory 9 with respect to the copyrighted material allegedly infringed by Chicago Rehab. Interrogatory 9 requires each Plaintiff to describe with specificity how *Chicago Rehab* improperly copied, used or published each such each Registered Copyright Work in violation of the Copyright Act. As with their trade secret responses, Plaintiffs fail to identify how Chicago Rehab infringed upon any copyrighted works, instead referencing misuse of some of the copyrighted documents by some of the other Defendants.

- The Court also ordered Plaintiffs to fully respond to Chicago Rehab Interrogatories 10 and 11, which require Plaintiffs to specifically identify and describe the factual basis for Plaintiffs' claims that Dilmas and Irvine were acting as agents for Chicago Rehab while they were employed by Symbria Rehab and emailed Symbria Rehab materials to themselves. Plaintiffs claim to have complied with the Court's order, but fail to actually identify or describe any factual basis for those claims.

Discovery sanctions are warranted in this case. If Symbria does not possess any responsive information, it filed a completely groundless lawsuit against Chicago Rehab. If Symbria does possess responsive information, and has not provided that information despite the Court's Discovery Order, it is in contempt of court. Either way, Symbria has violated the Court's Discovery Order, and sanctions are appropriate in the form of dismissal of the claims against Chicago Rehab, or, in the alternative, disallowing Plaintiffs' introduction of any evidence with respect to trade secrets misappropriated by Chicago Rehab, copyrighted works infringed by Chicago Rehab, or Plaintiffs' contentions that Dilmas or Irvine were acting as Chicago Rehab agents when they

emailed Symbria Rehab materials to themselves, and for costs and attorneys' fees spent addressing the failure to comply with the Court's Discovery Order.

## **BACKGROUND**

On August 16, 2021, Chicago Rehab propounded interrogatories to Symbria, attached hereto as Exhibit B. With numerous objections, Symbria "responded" on November 1, 2021, attached hereto as Exhibit C. After attempting to resolve the discovery disputes, Chicago Rehab sought court intervention by filing a motion to compel on December 17, 2021.

On April 4, 2022, the Court ordered Symbria to answer or amend its answers to fifteen interrogatories and responses to seven requests for production. See Ex. A, Discovery Order. Symbria was ordered to "specifically and separately identify each trade secret . . Plaintiff claims CRC misappropriated . . . .", and "describe with specificity how CRC misappropriated such trade secret and describe how CRC improperly used or disclosed each such trade secret", and "describe with specificity how CRC improperly copied, used or published" each copyrighted work. (Ex. A. at 1 of 13).

In response, Symbria, whether by intention or carefully constructed dilatory ignorance, provided, and continues to provide, unresponsive amended answers, in disregard of the Court's instructions in its Discovery Order. Symbria served its initial Amended Answers to Chicago Rehab's First Set of Interrogatories on May 4, 2022, shortly before this Court's settlement conference stay of discovery. A fair and accurate copy of those Amended Answers are attached hereto as Exhibit D. Those amended answers did not comply with the Court's Discovery Order. Chicago Rehab tried to resolve the discovery deficiencies with Symbria, exchanging numerous

emails, including without limitation those attached hereto as <u>Exhibits F</u>[2], <u>G</u>[3] (before the stay of discovery), and <u>H</u>[4], <u>I</u>[5] and <u>J</u>[6] (after the stay of discovery). Chicago Rehab also discussed these defects with Plaintiffs' counsel by phone on December 12, 2022 and December 14, 2022. Plaintiffs' counsel agreed to amend their interrogatory answers again, and served their Second Amended Answers to Chicago Rehab's First Set of Interrogatories on December 27, 2022. A fair and accurate copy of Plaintiffs' Second Amended Answers are attached hereto as <u>Exhibit E</u>. However, Plaintiffs Second Amended Answers also do not comply with the Court's Discovery Order. Chicago Rehab discussed these defects with Plaintiffs' counsel in person during a two hour

---

[2] Exhibit F is a 4/29/22 email from T. Griffin to G. Colunga noting that "Chicago Rehab seeks identification of the author and date of creation of those secrets so we can examine the author on whether and to what extent the information is truly secret or confidential. Chicago Rehab believes it already has been prejudiced by Plaintiffs' failure to provide that information, as the parties were required to submit proposed party deposition schedules without even knowing whether the list we were submitting even includes the authors of the trade secrets."

[3] Exhibit G is a 5/11/22 email from T. Griffin to Gia Colunga noting that "I strongly disagree with your assertion that Plaintiffs have complied with the Court's Order. First, you have not even identified the trade secrets. You simply list a bunch of documents (by my count, 121 documents) without identifying what information within the documents, if any, constitutes a trade secret, who created the trade secret information, the date of creation of the trade secret information, or how that trade secret information allegedly was misused by Chicago Rehab. Just listing a bunch of documents and vaguely identifying the authors of the document (rather than the author of the trade secret information allegedly contained within the document) is not sufficient to identify what information within the document constitutes the alleged trade secret, or who authored that trade secret information, or the date the trade secret information was authored. Indeed, Plaintiffs' Amended Answers do not indicate whether there is different trade secret information contained in each document, or whether the various documents identified (many of which appear to be identical or derivatives from the same earlier version) all contain the same or overlapping trade secrets. Moreover, Plaintiffs failed in many instances to identify even the author(s) and dates of creations of the subject documents, much less the trade secrets purportedly contained therein, and in perhaps the majority of instances merely state "various" for the date of creation."

[4] Exhibit H is a 12/9/22 email from T. Griffin to Gia Colunga noting that "Plaintiffs have yet to identify what information (<u>if any</u>) within the documents listed in Exhibit A constitutes Plaintiffs' trade secret(s). I raised this issue with you back in May 2022, shortly before the discovery stay was entered. . . In Plaintiffs' Amended Answers to Chicago Rehab's Interrogatories, Plaintiffs "direct CRC to the attached Exhibit A providing the requested information." But the referenced Exhibit A does <u>not</u> provide the requested information. Exhibit A does not "specifically and separately identify" *any* trade secret. Exhibit A is just a list of documents."

[5] Exhibit I is a 12/14/22 email from Gia Colunga to T. Griffin committing Plaintiffs to provide new amended responses to Chicago Rehab's interrogatories.

[6] Exhibit J is a 1/4/23 email from T. Griffin to Gia Colunga noting that "With respect to your Second Amended Responses and the proposed search terms, they have not resolved the issues we have discussed, so CRC is moving forward with its motion for discovery sanctions on the grounds that Plaintiffs have not complied with the Court's orders, including Plaintiffs' failures to identify the actual trade secrets misappropriated and the manner in which CRC purportedly misappropriated them. We will be seeking dismissal of the associated claims as the appropriate sanction."

meeting on January 5, 2023. At this time, Symbria has still not complied with the Court's Discovery Order.[7]

As the Discovery Order noted, the information the Court ordered Symbria to produce "is essential to the resolution of the claims before the district court." (Ex. A at 2 of 13). As a result of Symbria's continued failure to comply with the Court's Discovery Order, at this point, three years into the case, Chicago Rehab still does not know the bare minimum of the information needed to defend itself in this lawsuit – and in particular, what it did to warrant Symbria's allegations of misappropriation of trade secrets and infringement and misuse of Symbria's copyrighted materials.

## ARGUMENT

### I. Legal standard

If a party fails to obey a discovery order, the court may issue "just orders" to address the failure. Fed. R. Civ. P. 37(b)(2)(A) ("If a party…fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders"); *VYSE Gelatin Co. v. Hicks*, 2020 WL 12182759, at *4 (N.D. Ill. Feb. 11, 2020); *see also* Fed. R. Civ. P. 16(f) ("On motion or on its own, the court may issue any just orders… if a party or its attorney…fails to obey a…pretrial order"). A district court has "broad" discretion in imposing discovery sanctions. *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir.1988) (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984)). Under Rule 37, possible sanctions include, but are not limited to, "prohibiting the disobedient party from…introducing designated matters into evidence," "dismissing the action or proceeding in whole or in part" and "treating as

---

[7] At the conclusion of the in person meeting between the T. Griffin and Gia Colunga on January 5, 2023, Ms. Colunga committed to make yet one more attempt to amend Exhibit A to provide the level of specificity about the trade secrets demanded by Chicago Rehab. Plaintiffs would not commit to provide any other information detailing how Chicago Rehab, as opposed to other defendants, might have misused any trade secrets or infringed upon any copyrights, or to provide any further information detailing how Dilmas or Irvine purportedly were acting as agents for Chicago Rehab. Counsel discussed and understood that Chicago Rehab had to file the present Motion to comply with the Court-ordered deadline for filing such discovery motions.

contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A). Further, the court *must* order the disobedient party to pay reasonable expenses, including attorneys' fees, caused by the failure to obey a discovery order, unless the failure was "substantially justified." Fed. R. Civ. P. 37(b)(2)(C).

The sanction of dismissal is essential to the district courts' ability to manage their caseloads effectively, which protects the interests of all litigants. *See Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir.1988). However, the sanction imposed must be proportionate to the circumstances of the case. *Collins v. Illinois*, 554 F.3d 693, 694 (7th Cir. 2009). If the party has "displayed fault, bad faith, or willfulness," dismissal is appropriate as a sanction. *Greviskes v. Universities Research Inc.*, 417 F.3d 752, 759 (7th Cir. 2005). The sanction is presumed to be proportional if there is a "pattern of contumacious conduct or dilatory tactics" and a court enters a default judgment or orders dismissal. *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993). The facts underlying a decision to impose sanctions under Rule 37 must be established by a preponderance of the evidence. *Ramirez v. T.H. Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016).

## II.     Symbria' failure to provide the Court-ordered answers to discovery requests warrants dismissal of the claims against Chicago Rehab.

Symbria will not answer multiple interrogatories, despite the Discovery Order. An evasive and incomplete answer in discovery is akin to no answer, and thus a failure to comply with court-ordered discovery. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). In the Discovery Order, the Court noted how imperative the information Chicago Rehab requested is to Plaintiff's case against Chicago Rehab. (Ex. A at 2 of 13). In fact, the trade secret and copyright claims are the only claims granting federal jurisdiction over this matter.

Symbria has continued to deny Chicago Rehab relevant evidence in defiance of a court order. Chicago Rehab has explained to Symbria on multiple occasions that its discovery responses

are insufficient, and Symbria has not amended their answers to rectify the discussed deficiencies. Such incomplete and evasive responses warrant dismissal of the claims against Chicago Rehab.

### A. Symbria has not identified what information constitutes a "trade secret" or how Chicago Rehab misappropriated a "trade secret."

#### 1. Symbria has not specifically identified the trade secrets allegedly misappropriated, after years of discovery and four Amended Complaints

The Discovery Order required Symbria to respond to interrogatory 2, which requires each Plaintiff to "specifically and separately identify each trade secret . . . Plaintiff claims CRC misappropriated . . . ." (Ex. A at 1 of 13). In Symbria' Second Amended Answers to Chicago Rehab's Interrogatories, Symbria "direct[s] CRC to the attached Amended Exhibit A providing the requested information." (Ex. E at 2, 3 of 40). But the referenced Exhibit A (the "Trade Secret Chart") does <u>not</u> provide the requested information. The Trade Secret Chart does not "specifically and separately identify" *any* trade secret. This is readily apparent from the fact that Plaintiffs do not even mark the Trade Secret Chart as confidential. The Trade Secret Chart is just a list of documents under generalized headings. *See* (Ex. E at 5-29 of 40). Any the descriptions of purported "trade secret" information contained in the chart is purely generic and non-specific.

Symbria apparently expects Chicago Rehab to wager a guess as to what, exactly, in those documents Symbria believes constitutes a trade secret. In other words, instead of complying with the Magistrate's order by "specifically and separately" identifying each trade secret, Symbria chose to engage in the gamesmanship of sending Chicago Rehab on a scavenger hunt to try to find trade secrets somewhere buried within the over 120 documents listed in the Trade Secret Chart. Symbria's Trade Secret Chart contains 14 headings, each containing items such as "specific pricing" and "revenue, costs and profits," with the adjective "trade secret" plunked in front of the item. (Ex. E at 13, 17 of 40). Yet Symbria asserts entire documents are these "trade secrets" without

identifying what in the documents is secret. Symbria told Chicago Rehab on December 12 that each document *could* also include multiple trade secrets. Clearly, Symbria, three years after lodging its claims against Chicago Rehab, still cannot provide a list of what exactly Chicago Rehab misappropriated.

Even if Chicago Rehab wagered a guess as to what the trade secret *might* be that Plaintiff is claiming, the Trade Secret Chart lists numerous documents that facially *cannot* constitute trade secrets. For example, the Trade Secret Chart identifies a document which is the Rehab Monthly Management Report for United Methodist Communities at the Shores ("UMC") containing Resource Utilization Group ("RUG") report information for the period from January 2019 to June 2019. (*See* Ex. E at 16 of 40). Symbria presumably does not claim trade secret rights in UMC's RUG report information, as such RUG information must be provided for Medicare reimbursement by UMC. (*See* https://oig.hhs.gov/oei/reports/oei-02-02-00830.pdf, accessed December 14, 2022) (explaining the process for Medicare reimbursement for skilled nursing facilities). Thus, it is hard to comprehend what information in this UMC RUG report could be claimed as a trade secret by Symbria.

For a few more examples, other documents listed in the Trade Secret Chart contain "blank forms" which, as "blank," cannot contain any trade secrets; there are numerous references to "hidden content," which, if it contains the alleged trade secret, has not been disclosed to Chicago Rehab because it cannot access the "hidden content";[8] and Symbria admit that many of the

---

[8] Plaintiffs' failure to identify purported trade secrets contained in hidden content in excel spreadsheets has been discussed by counsel on several occasions, most recently at the two hour meeting between Chicago Rehab counsel Thomas Griffin and Plaintiff's counsel Gia Colunga on January 5, 2023. Gia Colunga offered to tender copies of all the documents Plaintiffs identify in their Exhibit A, which had been organized by category, and in their Exhibit C. When Mr. Griffin followed up on that offer on January 6, 2023, noting that he was trying to determine whether Plaintiffs' copies of the form had been altered somehow to allow the hidden content to be reviewed, Ms. Colunga conceded that something has to be done in order view the hidden content, but then reneged on her commitment to share any of the documents. *See* January 6, 2023 email string attached hereto as Exhibit K.

documents listed in the Trade Secret Chart contain publicly available information "originating from CMS", "originating with professional therapy associations", "originating from ACP" and "originating from Casamba." *See Howard v. Stellar Recovery Inc.*, 2013 WL 607826, at *3 (D. Colo. Feb. 19, 2013) ("There is nothing confidential about…blank forms"); *Cohen v. Apple Inc.*, 2020 WL 13582130, at *2 (N.D. Cal. Aug 3, 2020) (requiring that hidden content in documents produced in discovery "remain[] fully visible"); *Flotec Inc. v. S. Research, Inc.*, 16 F. Supp.2d 992, 1000 (S.D. Ind. 1998) ("[T]rade secret law does not protect information that is publicly available."); (*see e.g.,* Ex. E at 6, 20, 22 of 40).

Efforts to meet and confer with Symbria's counsel on these issues also have made it clear that Symbria's definition of a trade secret is a constantly moving target.  In some discussions, Symbria's counsel has claimed that certain formulas within a spreadsheet constitute the trade secrets. However, the referenced documents were pdfs tendered to MedRehab by a former Symbria customer, and the formulas were not ascertainable from the pdf.  Symbria's counsel then suggested that the entire look and feel of the document was a trade secret, though the concept of look and feel is not addressed anywhere in any of Plaintiffs' various Exhibit As that purport to identify the trade secrets.  Most recently, at the meeting between counsel on January 5, 2023, Plaintiffs' counsel conceded that many of the documents listed in Plaintiffs' most recently amended Exhibit A contain publicly available information, including information published by the federal government, but asserted the position that even a compilation of public information can qualify for trade secret protection.  However, Plaintiffs make no reference anywhere in that Exhibit A to a "compilation"; nor to Plaintiffs' suggest in that Exhibit A that any of the documents are compiled in a way to afford publicly available information trade secret status.

10

It has long been established in this District that a plaintiff must identify purported trade secrets with an appropriate level of specificity. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (finding that plaintiff, which argued that "all information in or about its software" is a trade secret, failed to identify *any* trade secrets). A plaintiff "cannot 'just identify a kind of technology' and then ask the court to pore over its filings in search of secrets that fit the [trade secret] statute's description." *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, No. 18 CV 8420, 2020 WL 4607247, at *9 (N.D. Ill. Aug. 11, 2020) (*citing IDX Systems*). *See also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992); *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987).

The Seventh Circuit explained the need for specificity in *IDX Systems*. The case involved a trade secret claim about software used to manage the financial side of a medical practice. IDX argued that a "43-page description of the methods and processes underlying and the inter-relationships among various features making up IDX's software package" was "specific enough." *IDX Sys.*, 285 F.3d at 583. The Seventh Circuit gave a straightforward answer: "No, it isn't." *Id.* The Court found IDX's offering to be at once "too vague and too inclusive." *Id.* IDX argued that effectively "all information in or about its software is a trade secret." *Id.* The Seventh Circuit held that claiming that everything in the document was a trade secret – without identifying any particular secret in the document with specificity – meant that nothing was protected. *Id.*

The Seventh Circuit held that, because plaintiff had failed to separate the trade secrets from the other information in the documents plaintiff identified as trade secrets, it was impossible to determine which aspects of the information were known to the trade, and which were not. *Id.* at 584. Even though the court conceded that some of the information in those documents may be genuine trade secrets, the Seventh Circuit court faulted IDX for failing to separately identify the

trade secret information in the documents as separate from the non-secret information. *Id*. According to the Seventh Circuit, IDX's attempt to tender the entirety of the documentation as a trade secret left it a mystery to exactly which pieces of information in the documents were actually trade secrets, resulting in the determination that IDX had identified *no* trade secrets. *Id*. The failure to define the trade secrets with specificity, and the failure to separate the secrets from the non-secrets, meant that the claim could not survive. A party cannot bring a misappropriation claim without adequately describing what was stolen. And it was not the Court's job (or the defendant's responsibility) to parse out the trade secrets from the non-secret information. *Id*. at 583; *see also, Composite Marine Propellers*, 962 F.2d at 1266.

Under the law of this District, Symbria has failed to specifically identify a single trade secret misappropriated by Chicago Rehab. Symbria's conduct in this case, identifying as many as 121 documents as containing its purportedly misappropriated trade secrets without identifying what specific content in any of those documents actually constitutes trade secret information, is far more egregious than that of the plaintiff in *IDX Systems*. Chicago Rehab has repeatedly informed Plaintiff of its deficient discovery responses and failures to comply with the Court's Discovery Order. This failure warrants dismissal of the claims against Chicago Rehab for misappropriation of trade secrets.

### 2. Symbria has not identified how Chicago Rehab allegedly misappropriated its trade secrets.

The Court also ordered Symbria to "describe with specificity how CRC misappropriated such trade secret and describe how CRC improperly used or disclosed each such trade secret" as requested by Interrogatory 2. (Ex. A at 1 of 13). This issue is central to Plaintiffs' trade secret misappropriation claims against Chicago Rehab, because to prevail on such a claim, a plaintiff must demonstrate "that the information at issue was a trade secret, that it was misappropriated ***and***

*that it was used in the defendant's business*." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) (citations omitted) (emphasis added). Symbria contends in its amended answers that the information complying with the Discovery Order is contained in the Trade Secret Chart. This contention is false. Indeed, it is hard to comprehend how Plaintiff could describe with specificity how Chicago Rehab misappropriated various trade secret information without even identifying the specific trade secret information allegedly misappropriated.

Symbria's disregard of the Court's Discovery Order is even more blatant, in that Symbria fails to describe in the Trade Secret Chart how Chicago Rehab used or disclosed any information from any of the documents listed in chart. Instead, Symbria merely makes some reference within the Trade Secret Chart, and only with respect to some of the listed documents, to instances in which other parties used certain of the *documents* (which, as noted, are not trade secrets themselves) without describing how any particular information within the subject documents (trade secrets or otherwise) were used by those other parties. Alleging use of a *document* is not specifically describing how anyone, much less Chicago Rehab, misappropriated, improperly used, or disclosed a *trade secret*.

The Trade Secret Chart also does not provide any information about any instance in which Chicago Rehab, or a Chicago Rehab employee that was *not* at the time leased to another employer, used any of the documents listed. None of the statements about the use of the listed documents bear any relation to Chicago Rehab. For example, the Trade Secret Chart argues that Callen is "an agent of Chicago Rehab" because he hires Chicago Rehab employees. (Ex. E at 20 of 40.) This statement is wholly conclusory, and mostly non-sensical. In any event, Plaintiffs do not contend that Callen misused any trade secret information in the context of his hiring Chicago Rehab employees. Additionally, with no further explanation, the Trade Secret Chart states that Chicago

Rehab somehow misused a document because employees leased to "MedRehab Alliance, MedRehab Alliance Interstate, and Joint & Neuro" sent emails on behalf of those companies (again without explaining how those emails constituted misuse of any particular trade secret). (Ex. E at 20 of 40). Rather than identifying any misuse of a trade secret by Chicago Rehab in its business, this statements concede that these individuals were acting as leased employees of "MedRehab Alliance, MedRehab Alliance Interstate, and Joint & Neuro" when they sent the subject emails. Consequently, their conduct in sending those emails cannot be attributed to Chicago Rehab.

### B. Symbria has not identified how Chicago Rehab misused copyrighted works.

Likewise, and for similar reasons as already stated, Symbria have failed to comply with the Court's Discovery Order requiring Plaintiffs to identify how Chicago Rehab infringed or misused Symbria' copyrighted information.

The Discovery Order required Symbria to "describe with specificity how CRC improperly copied, used, or published each" alleged copyright work. In Symbria's Second Amended Answers to Chicago Rehab's Interrogatories, Symbria claims that attached Exhibit C (the "Copyright Chart") provides the requested information. (Ex. E at 30-37 of 40). But the Copyright Chart, like the Trade Secret Chart, does not describe any instance in which Chicago Rehab, or any of its employees not leased out to other employers, used any of Symbria's registered copyrighted work. (Ex. E at 30-37 of 40).

Symbria also states in the Copyright Chart that Dilmas emailed certain copyrighted documents to his personal account, and then states that "Dilmas is an admitted employee of CRC based on answers to Plaintiffs' First Set of Interrogatories." (*See, e.g.* Ex. E at 32 of 40). Plaintiffs do not actually state that Dilmas was an employee of Chicago Rehab at the time he emailed Symbria copyrighted documents to his personal email account, but by disingenuously putting these

two statements together Plaintiffs falsely imply that Dilmas was a Chicago Rehab employee and acting as an agent of Chicago Rehab at the time he sent the subject emails. In fact, at the time he sent the subject emails, Dilmas was employed by Plaintiff Symbria Rehab. Dilmas was not an actual or apparent agent of Chicago Rehab when he emailed materials from his Symbria email account to his personal email account. Indeed, with respect to the emails between February 2019 and April 2019, Chicago Rehab did not yet even exist. Plaintiffs also make similarly bad faith discovery responses when they imply, without the factual specifics ordered by this Court, that Christine Irvine was acting as an agent of Chicago when she emailed Symbria materials to her personal email account. Ms. Irvine left Symbria Rehab's employ months before Chicago Rehab was formed. She could not have been acting as an agent of Chicago Rehab at the time she was employed by Symbria Rehab and emailed those materials to herself. Plaintiffs know this, but nonetheless tendered misleading discovery answers falsely asserting that they provide the information they were ordered to provide by the Court, when they do not.

Symbria asserts a claim for direct infringement of copyright against Chicago Rehab. This Court ordered Symbria to specifically identify how Chicago Rehab used any of the works listed in the Copyright Chart. Symbria states in its amended and second amended answers that they provide the Court-ordered information in the Copyright Chart, but this statement is false. Plaintiffs do not identify any use of the copyrighted documents by Chicago Rehab. Instead of providing the information mandated by the Discovery Order, Plaintiffs only identify instances in which other defendants purportedly used Symbria copyrighted documents, and then falsely represents that it complied with this Court's Discovery Order. Symbria has failed to comply with the Discovery Order, and unrepentantly so. Symbria should be sanctioned for such contempt of this Court's orders.

C.    *Alleging that other parties used misappropriated trade secrets or improperly used copyrighted works is not responsive to the request that Symbria identify misappropriation or infringement by Chicago Rehab.*

Symbria seems to contend, albeit indirectly, that Chicago Rehab is liable for conduct by leased employees while they were performing duties for other companies leasing their services. This is a false premise, because under Illinois law, Chicago Rehab is not liable for the actions of borrowed employees when they are leased out, and therefore their actions have no bearing on Chicago Rehab's liability. *See Behrens v. California Cartage Co., Inc.*, 373 Ill.App.3d 860, 865 (Ill. Ct. App. 2007) (finding that a staffing agency is not the "employer" of an employee who is leased out to another employer).   In any event, Plaintiffs' answers are not responsive to the discovery requests that this Court ordered Plaintiffs to answer.   The requests sought the factual basis for Plaintiffs' allegations that Chicago Rehab directly infringed Plaintiffs copyrights by Chicago Rehab misusing any copyrighted content.   The requests did not ask Plaintiffs to provide a theory as to why Chicago Rehab might be liable for another defendant's alleged misuse of copyrighted materials.

D.    *Symbria has not established that any of the individuals it identifies as purported "agents" of Chicago Rehab have an agency relationship with Chicago Rehab.*

The Court ordered Symbria to "describe with specificity" how Chicago Rehab misappropriated Symbria's trade secrets or misused Symbria's copyrighted works. (Ex. A, at 1, 2 of 13). In response, Symbria suggest in a mostly conclusory manner that certain individuals were somehow acting as "agents" of Chicago Rehab when they engaged in such conduct. (Ex. E). However, the Court also ordered Plaintiffs to identify and describe with specificity how two of these purported agents – Dilmas and Irvine – were acting as 'agents' of Chicago Rehab.  Plaintiffs fail to do so. Symbria does not provide any responsive information explaining how these individuals were acting as purported "agents" of Chicago Rehab in connection with the activities

16

about which Plaintiffs complain.. Accordingly, Symbria has not identified how Chicago Rehab misappropriated its trade secrets or misused its copyrighted works, and therefore fails to comply with the Court's Discovery Order.

Plaintiff has the burden of proving the existence of an agency relationship. *See Valenti v. Qualex, Inc.*, 970 F.2d 363, 367 (7th Cir. 1992). Agent authority is determined by the conduct of the principal. *Affordable Business Interiors, Inc. v. Pomeroy IT Solutions Sales Co., Inc.*, 336 F.R.D. 162, 164 (N.D. Ill. 2020) (citing *Moriarty v. Glueckert Funeral Home, Ltd.,* 155 F.3d 859, 865–66 (7th Cir. 1998). An agent's authority may be actual or apparent. *See id.* Actual authority is created by the conduct of the principal as interpreted by the agent, while apparent authority is created by the conduct of the principal as interpreted by third parties. *See id.* In either situation, agency is "initiated by a manifestation of the principal." *See Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1336 (7th Cir. 1995); *see also Northern Assur. Co. of America v. Summers*, 17 F.3d 956, 962 (7th Cir. 1994) ("Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship.") (citation omitted).

Symbria asserts in its Trade Secret Chart and Copyright Chart that Callen is an agent of Chicago Rehab "based on [Callen's] actions of hiring and managing Chicago Rehab employees" and that Irvine is an agent of Chicago Rehab "based on, among other things, [Irvine's] actions of hiring and managing Chicago Rehab employees" (Ex. E, at 16, 32 of 40). Plaintiffs cannot establish agency through the actions of the agent. As set forth above, Plaintiffs must identify actions by Chicago Rehab to establish agency. In any event, Plaintiffs also do not assert that either Callen or Irvine were acting in these "agency" capacities at the times they purportedly engaged in any conduct infringing on Plaintiffs' rights. On the contrary, Plaintiffs' make reference to

17

production materials showing that Callen was acting on behalf of MedRehab when he was engaged in the conduct about which Plaintiffs complaint.

With respect to much of the conduct referenced in Plaintiffs' Trade Secret Chart and Copyright Chart, Chicago Rehab could not have "initiated" an agency relationship by its conduct because Chicago Rehab **did not exist** until April 29, 2019. Even with respect to conduct after April of 2019, Symbria failed to identify in its Amended Answers any conduct by the individuals who allegedly misused Symbria's trade secrets or copyrighted works that had actual or apparent authority to act on behalf of Chicago Rehab with respect to that trade secret or copyrighted information. Symbria has not identified any facts or any evidence of Chicago Rehab's wrongdoing, beside bald assertions that "agents" (who were not acting on behalf of Chicago Rehab at the time) somehow acted improperly. Symbria has not identified any facts or evidence for the proposition that any individuals were acting as actual agents of Chicago Rehab in connection with any misuse of any trade secret information or copyright protected material. Symbria also has not identified any facts or evidence that Chicago Rehab, in any instance, acted in a way to imply that those individuals were acing with on behalf of and with the authority of Chicago Rehab when engaged in any such conduct. Plaintiffs cannot make wholly unsubstantiated assertions of agency to claim that Plaintiffs have complied with the Court's Discovery Order, at the same time failing to comply with the Court's order that they identify and describe in detail the facts supporting such agency assertions. Therefore, Symbria has not complied with the Court's Discovery Order that it "describe with specificity" how Chicago Rehab misappropriated any trade secrets or misused any copyrighted works.

E.    *Symbria's gamesmanship and willful disobedience of the Discovery Order warrants dismissal of its claims against Chicago Rehab.*

The repeated failures of Symbria to comply with the Discovery Order, and disingenuous assertions that they have provided the information ordered by this Court, rises to the level of bad faith and fault. Symbria has failed to cooperate in discovery, despite the Court ordering it to do so. *See Nelson v. Schultz*, 878 F.3d 236. Plaintiffs' deliberate failure to provide specific answers despite a Court order and multiple explanations from Chicago Rehab's counsel as to why the discovery responses are insufficient constitutes a "pattern of contumacious conduct or dilatory tactics." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993). Thus, Symbria's actions warrant dismissal of Symbria's claims against Chicago Rehab.

III.   **In the alternative, the Court should bar Symbria from introducing evidence it has not produced.**

In the alternative, even if the Court does not find that dismissal is appropriate, other sanctions are warranted. A showing of willfulness, bad faith, or fault is not required if the court does not impose dismissal or default as a discovery sanction. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011); *see also Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473 ("[T]he culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all.").

Negligence in following discovery proceedings may trigger sanctions. *Id.* (affirming an assessment of fees and costs against a party's counsel for failure to meet a deposition deadline and failing to produce documents in violation of court order); *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145-46 (N.D. Ill. 1982) (finding that failure to produce "complete and

accurate" responses, "even occasioned by simple negligence," warranted costs and attorneys' fees associated with the failure to make timely production).

Appropriate sanctions include barring introduction of evidence not produced. The Seventh Circuit has affirmed sanctions disallowing introduction of evidence not produced, even when it means that the party's case will crumble on a motion for summary judgment. *See Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997). In *Langley*, the plaintiff alleged that a furnace was responsible for the death of a family, and the plaintiff failed to produce the furnace. *Id.* at 512. The court noted that the defendant winning on a subsequent summary judgment was a "natural consequence" of the plaintiff's blunder in losing the evidence. *Id.* at 515.

Here, where Symbria has repeatedly failed to identify the trade secrets allegedly misappropriated by Chicago Rehab, or any evidence that Chicago Rehab misappropriated trade secrets, the Court should disallow Symbria to introduce such evidence at trial. As acknowledged in the Discovery Order, Chicago Rehab needs to know what it allegedly misappropriated, and how and when the alleged misappropriation took place. Symbria failed to provide this information despite the Court's Discovery Order, and despite repeated opportunities to amend its discovery answers to comply with the Discovery Order. Therefore, Symbria should be barred from introducing facts and evidence that it failed to provide in its discovery answers to Chicago Rehab.

## CONCLUSION

Chicago Rehab respectfully requests that this Court enter an order dismissing Symbria's trade secret misappropriation and copyright infringement claims against Chicago Rehab, or in the alternative, disallowing introduction of evidence as identified above, as a sanction for failure to answer the interrogatories as ordered by this Court.

Dated: January 6, 2023

Chicago Rehabilitative Collective, PLLC

By: /s/ Thomas G. Griffin
    One of Its Attorneys

Thomas G. Griffin (#6202401)
Matthew W. Casey (#6299254)
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
(312) 244-6700
tgriffin@walkerwilcox.com
mcasey@walkerwilcox.com

**<u>List of Exhibits</u>**

1. Exhibit A: Discovery Order
2. Exhibit B: Chicago Rehab's First Set of Interrogatories to Symbria
3. Exhibit C: Symbria's Answers to Chicago Rehab's First Set of Interrogatories
4. Exhibit D: Symbria's Amended Answers to Chicago Rehab's First Set of Interrogatories
5. Exhibit E: Symbria's Second Amended Answers to Chicago Rehab's First Set of Interrogatories
6. Exhibit F: Email correspondence from 4/29/22 (Griffin to Colunga)
7. Exhibit G: Email correspondence from 5/11/22 (Griffin to Colunga)
8. Exhibit H: Email correspondence from 12/9/22 (Griffin to Colunga)
9. Exhibit I: Email correspondence from 12/14/22 (Colunga to Griffin)
10. Exhibit J: Email correspondence from 01/04/22 (Griffin to Colunga)
11. Exhibit K: Email correspondence from 01/06/22 (Colunga to Griffin)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 6, 2023, we caused the foregoing document to be filed electronically with the Clerk of the Court via CM/ECF, which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing.

     /s/ Thomas G. Griffin
                Thomas G. Griffin