THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYMBRIA, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOHN R. CALLEN, *et al.*, <br><br> *Defendants*. | Case No. 1:20-cv-4084 <br><br> Hon. Mary M. Rowland <br><br> Hon. M. David Weisman |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNITED METHODIST HOMES & SERVICES' COUNTERCLAIMS

The Court should dismiss Defendant/Counter-Plaintiff UMHS's Counter-Claims as deficient as a matter of law. UMHS alleges two claims: 1) material breach of contract and 2) unjust enrichment against Plaintiffs/Counter-Defendants, including both Symbria, Inc. and the ESOP Trust.[1] (Countercl. ¶¶ 27-47.) Both of these claims relate to the Stock Purchase Agreement entered into by Symbria, UMHS, and eleven other former Symbria owners on October 31, 2015 (the "SPA"). Yet, both of these counterclaims fail because 1) UMHS has no breach of contract claim against Plaintiffs relating to the termination of John Callen, as this Court has already determined; 2) Plaintiffs have not, as a matter of law, breached the termination or payment provisions of the SPA; and 3) UMHS's unjust enrichment counterclaim cannot survive given the admitted existence of the SPA.

### ARGUMENT

A counterclaim "must provide enough factual information to state a claim to relief that is

---

[1] As used in this motion, "Symbria" refers to Symbria, Inc., Symbria Rehab, Inc., Alliance Rehab of Connecticut, LLC and Alliance Rehab HVA, L.L.C., while the "ESOP Trust" refers to GreatBanc Trust Company, in its capacity as Trustee of the Symbria, Inc. Employee Stock Ownership Trust and the Symbria, Inc. Employee Stock Ownership Trust. "Plaintiffs" refers to both Symbria and the ESOP Trust collectively.

1

plausible on its face and raise a right to relief above the speculative level" and must contain "more than mere labels and conclusions of a formulaic recitation of the elements of a cause of action." *Soos & Assocs., Inc. v. Five Guys Enters., LLC*, 425 F. Supp. 3d 1004, 1009 (N.D. Ill. 2019) (cleaned up). "While all well-pleaded allegations are generally presumed true, to the extent that the terms of on attached contract conflict with the allegations of the [pleading], the contract controls." *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 771 (N.D. Ill. 2015) (cleaned up); *see also Grabianski v. Bally Total Fitness Holding Corp.*, 891 F. Supp. 2d 1036, 1043 (N.D. Ill. 2012) ("[T]he terms of the contract control over inconsistent allegations"). "Dismissal for failure to state a claim is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Soos & Assocs.*, 425 F. Supp. 3d at 1009-1010 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

I. **This Court Should Dismiss UMHS's Breach of Contract Claim Because UMHS Has Not Stated a Claim for Breach, as this Court has Already Determined.**

In its breach of contract claim, UMHS alleges that Plaintiffs have breached their obligations under the SPA by terminating John Callen's Employment Agreement, by failing to use their best efforts to keep the existing Management Group in place, by failing to fulfill the promised consideration to UMHS under the SPA (*i.e.* retention of Callen), and by failing to pay their subordinated debt and principal on the note given to UMHS. (Countercl. ¶¶ 29-30, 33-34.)[2] These issues were previously addressed in the briefing on Plaintiffs' Motion to Dismiss UMHS's Counter-Claim to Plaintiffs' Third Amended Complaint, which this Court granted. (*See* Dkt. 491, 492, 519, 535, and 603).

---

[2] The SPA and Callen's Employment Agreement were attached to Plaintiffs' Fourth Amended Complaint, and UMHS incorporated those documents into its counterclaims. (Dkt. 606 at Ex. 1 and Ex. 2; *see generally* Countercl. ¶¶ 3, 10, 12-27, 39)

2

Because this Court previously found UMHS failed to plead a cognizable breach of contract counterclaim against Plaintiffs, UMHS's new counterclaim—which is based on the same facts and legal arguments—fails under the law of the case doctrine. Moreover, the plain language of the SPA makes clear that Plaintiffs were not prohibited from terminating John Callen and were not required to keep the Management Group in place. Likewise, payments on the Subordinated Note are not even required to be made for another three-and-a-half years under the terms of the SPA. This Court should again reject UMHS's invitation to ignore the clear language of the SPA, and instead dismiss UMHS's breach of contract claim for failure to state a claim.

### A. The Law of the Case Doctrine Prevents Relitigation of UMHS's Breach of Contract Claim.

The law of the case doctrine "embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chi.*, 486 F.3d 294, 301 (7th Cir. 2007). "This presumption against reopening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others." *Id.* Indeed, in granting Plaintiffs' prior motion to dismiss UMHS's counterclaim, this Court made determinations that should preclude UMHS's new breach of contract claim based on the same legal theory.

This Court found that UMHS did not plausibly plead a breach of Article 5.9(b) of the SPA because Callen's termination was not a violation of that provision. (Dkt. 603 at 14, 16-17.) The Court explained that Article 5.9(b) "concerns Symbria's post-closing covenant to 'use its best efforts to have the Management Group [including Callen] commit to renew the terms of their respective employment agreements on an annual or longer *basis after the fifth anniversary of the Closing. . . .*'" (*Id.* at 17 (emphasis added).) The Court found that this provision was never triggered because it only applied "once Callen's agreement was due for renewal five years after the

3

transaction closed" and "the SPA closed on October 31, 2015, . . . and Callen was terminated in July 2017, well before the fifth anniversary of the closing." (*Id.*) This prior determination is law of the case and precludes UMHS's new counterclaim.

In its counterclaim this time, UMHS makes the same claim as its prior pleading—that Plaintiffs violated the SPA "[b]y terminating John Callen" and in "fail[ing] to use its best efforts to keep the existing Management Group in place." (Countercl. ¶¶ 29-30.) When a party files a new pleading, such as a counterclaim, essentially amending its prior version, "[i]t is not a means by which a plaintiff can get around prior rulings in an action and rehash resolved legal issues with each new complaint [or counterclaim]." *Gonzalez v. City of Elgin*, No. 06 C 5321, 2007 WL 4246899, at *3 (N.D. Ill. Nov. 28, 2007) (granting motion to dismiss based on law of the case doctrine where timeliness of indemnification claim was resolved in prior motion to dismiss and plaintiffs' amendment to their complaint raised indemnification issue again, explaining there was no compelling reason to revisit the court's prior ruling).

The fact that UMHS's amended counterclaim may contain additional allegations relating to Symbria CEO Jill Krueger's involvement in Callen's termination, the relationship of Callen's Employment Agreement and the Management Group to the SPA, and the impact of Callen's termination on Plaintiffs does not alter the application of the law of the case doctrine. *See Ocholi v. SkyWest Airlines*, No. 11-C-0310, 2012 WL 3150310, at *4 (E.D. Wis. July 31, 2012) (dismissing racial discrimination claims that were raised anew in amended complaint with additional explanation as to how the defendant's employee created problems for the plaintiff because of his wife's race, explaining, "The [prior] Decision specifically dismissed claims, like these, that alleged discrimination based on [his wife's] race . . . . It is, as [defendant] argues, simply more of the same[]"). These additional facts have no bearing on this Court's interpretation of the

4

SPA's language and determination that Article 5.9(b) was not violated. And UMHS could have pleaded these facts in its prior counterclaim, but it chose not to do so, which further demonstrates that the law of the case doctrine should apply. *U.S. v. Real Prop. Located at 265 Falcon Rd.*, No. 08-CV-700-JPG, 2010 WL 104660, at *2 (S.D. Ill. Jan. 4, 2010) (refusing to revisit the law of the case where the allegedly new information was known or knowable at the time the issue was first determined by the Court, explaining "[t]he Court will not allow [a party] now to present arguments or evidence she should have presented in her original response").

Accordingly, this Court should dismiss UMHS's renewed counterclaim under the law of the case doctrine. UMHS has not requested reconsideration of this Court's prior ruling and cannot demonstrate a compelling reason for this Court to revisit its prior interpretation of the exact contractual language at issue in UMHS's amended counterclaim. *See Pitzer v. City of E. Peoria, Ill.*, 708 F. Supp. 2d 740, 745 (C.D. Ill. 2010) ("The law of the case doctrine thus precludes relitigation of this issue, especially as Defendants have not asked for reconsideration of the . . . decision, and have not provided any compelling reason for reconsideration").

**B.     UMHS's Breach of Contract Claim Fails to State a Claim Under the Clear Language of the SPA.**

Even if this Court chose to reconsider its prior ruling, UMHS's amended counterclaim fails to state a claim for breach of contract under the plain language of the SPA. Indeed, UMHS has failed to allege breach of any of the actual provisions cited in the counterclaim. For breach of contract claims, "the plain language of a written agreement controls the obligations of the parties to it." *SEG Liquidation Co. v. Stevenson*, No. 07-3456, 2008 WL 3849907, at *3 (N.D. Ill. Aug. 14, 2008) (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)); *accord Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 856 (7th Cir. 1992) ("language of [relevant agreement] controls the parties' contractual obligations") (applying Illinois law).

5

UMHS has asserted a breach of contract claim by pleading against all "Plaintiffs/Counter-Defendants." (Countercl. ¶ 6.) In doing so, UMHS has asserted its counterclaim against Symbria, Inc., its subsidiaries, and the ESOP Trust—despite the fact that the ESOP Trust did not undertake the obligations referenced in UMHS's counterclaim.

UMHS's breach of contract claim is premised on John Callen's Employment Agreement (to which it is not a party), a post-closing covenant in Article 5.9 of the SPA, and unnamed payment provisions relating to the Subordinated Note due under the SPA. (*See id.* ¶¶ 10-26, 28-38.) UMHS alleges that, under Callen's Employment Agreement, the Company[3] "agrees to continue to employ Callen to serve as the Company's President, and Executive" and that this provided confidence to UMHS, Symbria, and the other sellers that the Company would be able to fulfill its obligations under the SPA. (*Id.* ¶¶ 6, 12, 16.) In support, UMHS cites a provision of Callen's Employment Agreement stating that "[a]s a condition to consummation of the [SPA] Transaction, the Company and the Executive desire to enter into this Employment Agreement[.]" (*Id.* ¶ 17.) UMHS also alleges that the SPA identified Callen as part of the Management Group and that the SPA "agreed to maintain the Management Group and employment of Callen as a Post-Closing Covenant." (*Id.* ¶¶ 19-20.) In making these claims, UMHS relies solely on Article 5.9(b), which *actually* provides:

> Post-Closing Covenants. The Company will use its best efforts to have the Management Group commit to renew the terms of their respective employment agreements on an annual or longer basis after the fifth anniversary of the Closing, until the Subordinated Notes and Warrants are no longer outstanding.

(*Id.* ¶ 23; Dkt. 606 at Ex. 1, at 38.) UMHS alleges that it entered into the SPA in consideration of the Plaintiffs' obligations under this article and the Employment Agreement with Callen. (Countercl. ¶¶ 12, 23-24.) Based on these allegations, UMHS claims Plaintiffs breached the SPA

---

[3] "The Company" is defined as "Symbria, Inc." in the SPA and "Alliance Rehab, Inc.. . . a subsidiary of Symbria, Inc." in Callen's Employment Agreement. (Dkt. 606 at Ex. 1, at 1 and Ex. 2, at 1.)

"[b]y terminating John Callen" and by "fail[ing] to use its best efforts to keep the existing Management Group in place" such that Plaintiffs have "failed to provide and fulfill the promised consideration to UMHS pursuant to the terms and obligations of the SPA." (*Id.* ¶¶ 29-30, 33.)

UMHS also alleges—without any further explanation or reference to specific provisions in the SPA—that Plaintiffs "have failed to pay their insubordinated [*sic*] debt and have failed to pay back any principal on the note owed to UMHS." (*Id.* ¶ 34.) UMHS avers that terminating Callen has made it "impractical for Plaintiffs/Counter-Defendants to satisfy the note under the current Management Group" and "has impacted [the Company's] solvency and ability to fulfill its obligations under the SPA." (*Id.* ¶¶ 31, 35-36.)

However, UMHS's allegations fail to state a claim for breach of the SPA because—as Plaintiffs explained in their prior motion to dismiss briefing—i) the ESOP Trust does not owe any obligations under Article 5.9(b) or with regard to the Subordinate Note; ii) Plaintiffs have not violated Article 5.9(b) in terminating Callen and altering the Management Group; and iii) Plaintiffs have not violated any payment provisions relating to the Subordinated Note.

      i.    **The ESOP Trust Does Not Owe Any Obligations Under Article 5.9(b) or With Regard to the Subordinated Notes.**

UMHS fails to state a claim for breach by the ESOP Trust because the SPA contains no obligations relating to the ESOP Trust in the contractual provisions on which UMHS relies. Article 5.9(b) provides that, upon certain conditions, "*[t]he Company* will use its best efforts to have the Management Group commit to renew their respective employment agreements" after their initial expiration. (Dkt. 606 at Ex. 1, at 38 (emphasis added).) Importantly, in the SPA the "Company," which is defined as Symbria, Inc., was the entity agreeing to this covenant. (*Id.* at Ex. 1, at 1, 38 § 5.9(b)). The ESOP Trust made no covenants or other agreements in Section 5.9. Likewise, the Company, not the ESOP Trust, was obligated to "deliver or cause to be delivered . . . to Sellers,

7

the Subordinated Notes, duly executed by the Company[.]" (*Id*. at Ex. 1, at 18 § 3.4(b).) Indeed, it was *the Company* that issued the Subordinated Notes to the Sellers like UMHS and promised to pay those Subordinated Notes—not the ESOP Trust.[4] (Dkt. 606 at Ex 1, at 9 and Sched. A to SPA Ex. E, at 1 ("Symbria, Inc., an Illinois corporation ('Company'), hereby promises to pay to . . . 'Holder' . . . .")).

The plain language of the SPA is therefore fatal to UMHS's claim for breach of contract against the ESOP Trust related to any alleged breach. Accordingly, this Court should dismiss UMHS's breach of contract claim against the ESOP Trust.

     **ii. Plaintiffs Have Not Violated Article 5.9(b) in Terminating Callen, which Altered the Make-up of the Management Group.**

Next, UMHS claims that Plaintiffs breached SPA Article 5.9(b) "[b]y terminating John Callen" and by "fail[ing] to use its best efforts to keep the existing Management Group in place" (Countercl. ¶¶ 29-30.) However, this ignores the actual language of this post-closing covenant, which merely provides that Symbria "*will use its best efforts to have the Management Group commit to renew the terms of their respective employment agreements* on an annual or longer basis *after the fifth anniversary of the Closing*," which is when they otherwise would expire under the terms incorporated into the SPA. (Dkt. 606, Ex. 1, at 38 § 5.9(b) (emphasis added) and Ex. 2, at 2 § 2.2.) Nowhere in the SPA is there any obligation prohibiting Symbria from terminating Callen or other executives for cause or for any other permissible reason.

Moreover, such an obligation directly would conflict with the provisions of the Employment Agreement of the same date itself, which provides detailed termination procedures that would be rendered moot if the SPA prohibited Symbria from exercising them. (Dkt. 606, Ex.

---

[4] While the ESOP Trust was obligated to issue and deliver to Sellers an "Interim Subordinated Note" for the Seller's benefits, UMHS's counterclaim does not claim any breach regarding this "Interim Subordinated Note". (*See generally* Countercl.; Dkt. 606 at Ex. 1, at 11 § 2.1(b) and at 17 § 3.3 (c)).

8

2, at 7-9 §§ 5.1–5.4.) This result would be contrary to well-established Illinois law. *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 622 (7th Cir. 1995) ("To preserve [the reasonable expectations of the parties], a contract must be considered in its entirety; all documents that are entered into simultaneously, should be construed together"). Indeed, as the Court previously determined, Article 5.9(b) was never triggered because it only applied "once Callen's agreement was due for renewal five years after the transaction closed" and "and Callen was terminated in July 2017, well before the fifth anniversary of the closing." (Dkt. 603 at 17.) Thus, there is no breach of Article 5.9(b) as it was not a prohibition on terminating Callen and the renewal efforts were never even triggered.[5]

### iii. Plaintiffs Have Not Stated a Claim for Violation of the Payment Provisions Relating to the Subordinated Note.

UMHS also claims that Plaintiffs "have failed to pay their insubordinated [*sic*] debt and have failed to pay back any principal on the note owed to UMHS" and go on to allege concern that Callen's termination may affect Plaintiffs' ability to fulfill these obligations under the PSA. (Countercl. ¶¶ 31, 34-36.) However, in claiming breach of contract, UMHS tellingly neglects to provide any citation to the SPA or its exhibits governing payment of the Subordinated Note. If it had, the futility of this purported claim immediately would become apparent.

In particular, Section 3.4(b) of the SPA provides that Symbria will deliver the Subordinated Notes to UMHS and the other Sellers at the closing on October 31, 2015. (Dkt. 606 at Ex. 1, at 18.) The agreement further provides that the substance of the Subordinated Notes will be "in the

---

[5] To the extent UMHS is alleging Plaintiffs have breached Callen's Employment Agreement, UMHS, of course, has no standing to make such a claim as it is not a party to that contract. (*See generally* Dkt. 606 at Ex. 2.) *See Koehler v. Packer Grp., Inc.*, 53 N.E.3d 218, 234 (Ill. App. Ct. 2016) ("[T]he general rule [is] that only parties to an [employment] agreement may enforce it"). Additionally, the ESOP Trust, as a non-party to the Employment Agreement, could not be liable for such a breach. (*See generally* Dkt. 606 at Ex. 2.) *See Northbound Grp., Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 973 (N.D. Ill. 2013), *aff'd*, 795 F.3d 647 (7th Cir. 2015) ("[A defendant] cannot be liable for breach of a contract to which it was not a party").

9

form attached" to and contained in Exhibit E of the SPA. (*Id.* at 9.) In answering the Fourth Amended Complaint, "UMHS admits that it received a note from Symbria, subordinated to Symbria's debt to its senior lender, with principal and interest under the note due to UMHS *pursuant to the terms of the executed [SPA]*." (UMHS Ans. ¶ 30 (emphasis added)). And, critically, the Subordinated Note UMHS admits to receiving provides that, "Subject to early payment, as provided for elsewhere in this Note, the balance of the Principal Amount, and all other amounts due *shall be payable to the Holder on October 31, 2025*." (Dkt. 606 at Ex. 1, Sched. A to SPA Ex. E at 2 § 1(b) (emphasis added).)[6] In other words, under the SPA's own terms, which indisputably govern principal payments under the Subordinated Note, UMHS's claim that Symbria has "failed" to make principal payments cannot state a claim for breach of contract because such payments are not required to be made for (at least) another three-and-a-half years. UMHS has made no allegations in its counterclaim that any facts exist that would support the acceleration of the note under its own terms or the terms of the SPA. Thus, UMHS's claim for breach of the SPA based on failure to make principal payments under the Subordinated Notes fails as a matter of law.

Moreover, Plaintiffs dispute that Callen's departure from the Company has made it "impractical" for Plaintiffs to satisfy the Subordinate Note or impacted the Company's solvency— although these conjectures would not support a breach of contract claim in any case. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) ("The court is not required to credit rank speculation [contained in a complaint]"); *Twombly*, 550 U.S. at 570 (noting that allegations must be sufficient to push claim "across the line from conceivable to plausible").

---

[6] The Subordinated Note gives Symbria the permissive right—not obligation—to "prepay all or any portion of the unpaid Principal Amount." (Dkt. 606, Ex. 1 at Sched. A to SPA Ex. E at 2 § 2.)

**II. This Court Should Dismiss UMHS's Unjust Enrichment Claim Due to the Admitted Existence of the SPA and Other Failures to State a Claim.**

In Count II of UMHS's counterclaim, UMHS alleges that Plaintiffs have been unjustly enriched to the detriment of UMHS by invoking the Restrictive Covenants contained in the SPA but "fail[ing] to provide and fulfill the promised consideration to UMHS pursuant to the terms and obligations of the SPA." (Countercl. ¶¶ 40-46 ("As a result of these breaches Plaintiffs/Counter-Defendants have failed to satisfy the outstanding owed note and warrants, and at the same time continue to restrict UMHS's ability to compete and solicit with Plaintiffs/Counter-Defendants. As such, Plaintiffs/Counter-Defendants have not satisfied the agreed consideration under the SPA in exchange for the obligations set forth in the restrictive covenants in Article 5.4.").) Thus, UMHS's claim for unjust enrichment is based solely upon the obligations set forth in the SPA. The existence of the written contract between the parties is fatal to UMHS's unjust enrichment claim. But, even if this was not the case, UMHS's unjust enrichment claim fails because it has not adequately pleaded its claim and Plaintiffs have not acted unjustly toward UMHS.

      **i.    Due to the Admitted Existence of the SPA and Subordinated Note, on which UMHS's Unjust Enrichment Claim is Based, UMHS Has Failed to State a Claim.**

UMHS's unjust enrichment claim fails to state a claim because it admits the existence of valid contracts in the form of the SPA and the Subordinated Notes. (Countercl. at ¶¶ 40-46.) Indeed, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (applying Illinois law); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'").

11

> The rationale for this rule goes to the heart of UMHS's improper unjust enrichment claim:
>
> When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract.

*F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 151 (Ill. App. Ct. 1995). Indeed, in the SPA, UMHS assumed the "risks" that Callen might be terminated and payment under the Subordinated Note would not be due until October 2025, and UMHS cannot now recover in quasi-contract based on Callen's termination or its alleged concerns over Plaintiffs' solvency. *See supra* §§ I.B.ii-iii (addressing ability to terminate Callen and payment obligations under the respective agreements); *F.H. Prince*, 656 N.E.2d at 151 (affirming dismissal of unjust enrichment claim where there was a specific contract governing the parties' relationship).

Not only does UMHS admit the existence of the SPA governing the parties' relationship, but its unjust enrichment claim impermissibly rests exclusively on the breach of that express contract. *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) ("[Plaintiff] fails to present a claim for unjust enrichment, because that is unavailable where the claim rests on the breach of an express contract"); *see Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *17 (N.D. Ill. Feb. 24, 2015), *aff'd in part*, 830 F.3d 735 (7th Cir. 2016) ("Thus it is clear that the apparent basis for Stevens's unjust enrichment claim—his purported ownership of the clients upon termination—is related to the subject matter covered in the contract. The existence of the contract precludes Stevens from pursuing an unjust enrichment claim on this basis."). The alleged benefit Plaintiffs have retained is the right to enforce the Restrictive Covenants *contained in the SPA* and UMHS alleges it has not been provided consideration for this benefit—namely, the retention of Callen and the Management Group and the (early) payment of the Subordinated Note

*under the SPA*. (Countercl. ¶¶ 40-46.) Because an express contract between the parties exists and UMHS's unjust enrichment claim is based on alleged breaches of that contract, UMHS has failed to state a claim on which relief may be granted. *See Allied Vision Grp., Inc. v. RLI Pro. Techs., Inc.*, 916 F. Supp. 778, 782 (N.D. Ill. 1996) (addressing pleading in the alternative and stating, "Rule 8(e)(2) does not permit [the plaintiff] to claim within a single count that there was an agreement and that [a party] was unjustly enriched").

       **ii. UMHS Fails to Adequately Plead a Claim for Unjust Enrichment and Plaintiffs Have Not Acted Without Justification.**

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc*., 545 N.E.2d 672, 679 (Ill. 1989). To survive a motion to dismiss, a party must plead these elements and the absence of a remedy provided by law. *Sherman v. Ryan,* 911 N.E.2d 378, 399 (Ill. App. Ct. 2009). Importantly, UMHS's counterclaim does not allege an unjust retention or the absence of a remedy provided by law in even a conclusory fashion. (*See* Countercl. ¶¶ 40-47.) This in and of itself warrants dismissal of UMHS's Count II. *Id.* (dismissing unjust enrichment claim where "the complaint d[id] not allege, even in a conclusory fashion, the absence of justification and the absence of a remedy provided by law, two essential elements of a claim for unjust enrichment").

  However, any amendment of UMHS' unjust enrichment claim would be futile as there is clearly an adequate remedy at law—namely, breach of contract—and Plaintiffs' termination of Callen and timely payment of the Subordinated Note is in accordance with the plain language of the SPA. Indeed, as explained in Sections I.B.ii-iii above, it was not a violation of the SPA to terminate Callen's at-will employment and payments on the Subordinated Note are not yet due.

Accordingly, Plaintiffs have not acted without justification under the SPA and UMHS's claim for unjust enrichment should be dismissed. *See E & E Hauling*, 607 N.E.2d at 177 ("To recover under this theory, plaintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment.").

### iii. UMHS Fails to State a Claim for Unjust Enrichment Against the ESOP Trust.

Finally, UMHS's claim for unjust enrichment against the ESOP Trust also fails for the same reasons described above in Section I.B.i. Namely, because the ESOP Trust took on no covenants related to Callen's employment and was not the payor of the Subordinated Notes under the SPA, the ESOP Trust could not have acted unjustly toward UMHS.

### CONCLUSION

For all of these reasons, the Court should dismiss Defendant/Counter-Plaintiff United Methodist Homes & Services' Counter-Claims for Breach of Contract and Unjust Enrichment with prejudice and in its entirety, and further grant any such other relief as is just and appropriate.

Dated: February 7, 2023

Respectfully submitted,

SYMBRIA, INC., SYMBRIA REHAB, INC., ALLIANCE REHAB OF CONNECTICUT, LLC, and ALLIANCE REHAB HVA, L.L.C., GREATBANC TRUST COMPANY, in its capacity as Trustee of the Symbria, Inc. Employee Stock Ownership Trust, and the SYMBRIA, INC. EMPLOYEE STOCK OWNERSHIP TRUST

By: */s/* Matthew J. O'Hara
    One of Their Attorneys

14

Matthew J. O'Hara (Ill. ARDC No. 6237795)
Terrence J. Sheahan (Ill. ARDC No. 6257646)
Gia F. Colunga (Ill. ARDC No. 6282679)
Katie D. Krysan (Ill. ARDC No. 6323797)
Lillian G. Lamphere (Ill. ARDC No. 6340044)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
mohara@freeborn.com
tsheahan@freeborn.com
gcolunga@freeborn.com
kkrysan@freeborn.com
llamphere@freeborn.com

Jason P. Stearns (Fla. Bar No. 059550)
Freeborn & Peters LLP
201 North Franklin Street, Suite 3550
Tampa, Florida 33602
(813) 488-2920
jstearns@freeborn.com