**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SYMBRIA, INC., *et al.*,

          *Plaintiffs*,

          v.

JOHN R. CALLEN, *et al.,*

          *Defendants*.

Case No. 1:20-cv-4084

Hon. Mary M. Rowland

Hon. M. David Weisman

**PLAINTIFFS' RESPONSE TO DEFENDANT CHICAGO
REHABILITATION COLLECTIVE'S MOTION FOR DISCOVERY SANCTIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Background ................................................................................................................... 1

      A.    Plaintiffs' Compliance with this Court's April 4, 2022 Discovery Order. ................................................................................................. 1

      B.    CRC's Failure to Timely Raise its Dissatisfaction and Plaintiffs' Good Faith Efforts. ..................................................................... 4

      C.    Plaintiffs' Repeated Amendments to Address CRC's Complaints. ........... 5

STANDARD .................................................................................................................. 7

ARGUMENT ................................................................................................................. 7

    I.    Plaintiffs' Answers Complied with the Court's April 4 Discovery Order. ............. 8

      A.    Plaintiffs' Trade Secrets and Copyright Charts Are Sufficiently Detailed at this Early Stage in the Litigation. ................................. 8

      B.    Plaintiffs' Have Not Violated this Court's Order Based on Confidentiality Designations, Technology Difficulties, or Reliance on Actions of CRC Employees Occurring Prior to CRC's Formation. ............................................................................... 10

    II.    A Motion for Discovery Sanctions is Not the Appropriate Vehicle to Resolve CRC's Arguments About Plaintiffs' Claims on the Merits. ................... 13

    III.    CRC Waived Its Right to Bring a Motion for Sanctions. ..................................... 15

    IV.    The Severe Sanctions of Dismissal and Prohibition of Evidence Are Not Warranted. ..................................................................................... 17

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABC Acquisition Co., LLC v. AIP Prod. Corp.*,
No. 18 CV 8420, 2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) .............................................14

*Barnes v. City of Chi.*,
2000 WL 1745180 (N.D. Ill. Nov. 27, 2000) ........................................................................17

*Barnhill v. U.S.*,
11 F.3d 1360 (7th Cir. 1993) .........................................................................................7, 18

*Behrens v. Ca. Cartage Co., Inc.*,
373 Ill. App. 3d 860 (Ill. App. Ct. 2007) ........................................................................12, 14

*Brandt v. Vulcan, Inc.*,
30 F.3d 752 (7th Cir. 1994) ...........................................................................................15, 16

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) .............................................................................................14

*Dotson v. Bravo*,
321 F.3d 663 (7th Cir. 2003) .................................................................................................7

*Freeman v. Augustine's, Inc.*,
360 N.E.2d 1245 (Ill. App. Ct. 1977) ...................................................................................15

*FTC v. Lifewatch Inc.*,
176 F. Supp. 3d 757 (N.D. Ill. 2016) ...................................................................................15

*Greyer v. Ill. Dep't of Corrections*,
933 F.3d 871 (7th Cir. 2019) .................................................................................................7

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ...............................................................................................14

*JCW Invs., Inc. v. Novelty, Inc.*,
482 F.3d 910 (7th Cir. 2007) ..........................................................................................12, 15

*Jt. Comm'n on Accreditation of Healthcare Org. v. Fortis Bus. Media LLC*,
No. 14 C 10225, 2017 WL 3895593 (N.D. Ill. Sept. 6, 2017)...........................................12, 15

*Ladien v. Astrachan*,
128 F.3d 1051 (7th Cir. 1997) ...............................................................................................7

*Lair for Est. of Lair v. Reyes*,
　2020 WL 9718813 (S.D. Ill. Mar. 17, 2020) ........................................................18

*Langley by Langley v. Union Elec. Co.*,
　107 F.3d 510 (7th Cir. 1997) ..............................................................................18

*Liberty Mut. Ins. Co. v. Ecowater Sys., Inc.*,
　2004 WL 1073687 (N.D. Ill. May 12, 2004) ......................................................18

*LKQ Corp. v. Gen. Motors Co.*,
　No. 20 C 02753, 2022 WL 14634800 (N.D. Ill. Oct. 25, 2022) .........................10

*Lynchval Sys., Inc. v. Chi. Consulting Actuaries, Inc.*,
　1996 WL 735586 (N.D. Ill. Dec. 19, 1996) ........................................................10

*M.H. Eby, Inc. v. Timpte Indus., Inc.*,
　No. CV 19-386, 2019 WL 6910153 (E.D. Pa. 2019) ...........................................15

*Master Tech Prods., Inc. v. Prism Enters., Inc.*,
　No. 00 C 4599, 2002 WL 475192 (N.D. Ill. Mar. 27, 2002) ...............................15

*McCarthy v. AT&T Mobility Servs. LLC*,
　2018 WL 3831530 (N.D. Ill. Aug. 10, 2018) .......................................................9

*Moss Holdings Co. v. Fuller*,
　No. 20-CV-01043, 2020 WL 1081730 (N.D. Ill. Mar. 6, 2020).....................12, 15

*Nationwide Mut. Ins. Co. v. Total Prop. Care Inc.*,
　2018 WL 2356214 (N.D. Ind. May 24, 2018) .....................................................18

*Nationwide Sales & Servs., Inc. v. Envirocare Techs. Int'l, Ltd.*,
　2018 WL 2436969 (E.D.N.Y. May 30, 2018) ......................................................9

*Newson v. Oakton Cmty. Coll.*,
　2022 WL 2874801 (N.D. Ill. July 12, 2022).........................................................7

*Ramirez v. T&H Lemont, Inc.*,
　845 F.3d 772 (7th Cir. 2016) ...............................................................................7

*Segerdahl Corp. v. Feruzza*,
　No. 17-CV-3015, 2019 WL 77426 (N.D. Ill. Jan. 2, 2019)............................12, 15

*Sperl v. Henry*,
　124 N.E.3d 936 (Ill. 2018)...................................................................................15

*TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*,
　629 Fed. Appx. 916 (Fed. Cir. 2015) ...................................................................9

*U.S. v. Stinson*,
No. 614CV1534, 2016 WL 8488241 (M.D. Fla. Nov. 22, 2016)...........................................17

*Walrus Brands, LLC v. Peaches Uniforms, Inc.*,
No. 12 C 4892, 2018 WL 11453554 (N.D. Ill. July 9, 2018)...................................................17

**STATUTES**

765 ILCS 1065/2(b)(1)-(2) ........................................................................................................14

18 U.S.C. § 1839(5)(A)-(B)................................................................................................12, 14

This Court should deny CRC's motion for discovery sanctions. CRC employs five former Symbria employees, several of whom absconded with valuable intellectual property of Symbria that is now being used unlawfully to benefit their new employer, CRC, and the other defendants. CRC contrived the legal fiction of "leasing" those employees to do the work of other defendants, such as MedRehab Alliance, MedRehab Alliance Interstate (both owned in part by UMHS), and Joint & Neuro and Joint & Neuro of Chicago. CRC's "leased" employees even have titles and email addresses with MedRehab Alliance and Joint & Neuro and are managed by John Callen.

Now, with oral discovery barely underway, CRC asks the Court to take the draconian step of dismissing Plaintiffs' claims because their interrogatory answers are supposedly insufficient. But CRC's motion is factually and legally baseless. As detailed below, contrary to CRC's characterizations, Plaintiffs have, in fact, complied with its discovery obligations and this Court's orders. CRC's sanctions motion therefore is nothing more than a procedurally flawed attempt to subvert the merits and secure a favorable judgment while insulating its conduct from scrutiny. To be clear, CRC makes challenges more suitable for summary judgment or trial, such as whether Plaintiffs have "identified any facts or any evidence" supporting their agency, alter ego, and misappropriation claims. Yet, a motion for discovery sanctions is not the place to resolve such questions, particularly where Plaintiffs have not even had the benefit of completing discovery into the very facts at issue. CRC also has unreasonably delayed raising any of these issues. Accordingly, this Court should not entertain CRC's flawed arguments and should deny its motion.

## **BACKGROUND**

### A.     **Plaintiffs' Compliance with this Court's April 4, 2022 Discovery Order.**

Plaintiffs responded to CRC's First Set of Interrogatories on November 1, 2021. (*See* Mot. Ex. C.) After a dispute arose, this Court issued an order on April 4, 2022, requiring Plaintiffs to

"answer" Interrogatories 2 and 3 directed to identifying Plaintiffs' trade secrets, their provenance, and CRC's misappropriation by bates number for CRC to "understand the bases for plaintiffs' claims." (Mot. Ex. A. at 1-2.) Plaintiffs were further directed to "answer" Interrogatory 9 relating to identifying Plaintiffs' registered copyrighted works and CRC's infringement, including describing how CRC improperly used or copied those works. (*Id.* at 3.). This Court also ordered Plaintiffs to simply "answer" Interrogatories 10 and 11 regarding the factual basis for their allegations that Christos Dilmas and Christine Irvine were acting as CRC's agents. (*Id.* at 3-4.)

Plaintiffs timely complied with the Order by serving their amended answers on May 4, 2022. (*See* Mot. Ex. D.) Plaintiffs' amended answer to Interrogatories 2 and 3 included a chart, Exhibit A, identifying *121* misappropriated documents by bates number, detailing for each a paragraph-long description of CRC's role in the misappropriation, the date the trade secret was created, the author of the trade secret, the sources used to create the trade secret, and the individuals with access to the trade secret ("Trade Secrets Chart"). (*Id.* at 2-4 & Ex. A.) Plaintiffs also directed CRC to a 32-page document, Exhibit B, identifying individual Symbria employees with access to the identified trade secrets by categories to assist CRC in understanding the roles of the individuals referenced on the Trade Secrets Chart (the "Employee List"). (*Id.* at 4 & Ex. B.) Together, the Trade Secret Chart and Employee List identify the existence of Plaintiffs' trade secrets, note the efforts to create them, identify those with access to them, and detail how they were misappropriated—all essential elements of Plaintiffs' claims. (*See* Mot. Ex. D at Ex. A & B.) These documents comply with this Court's directive that Plaintiffs provide answers that help CRC to "understand the bases for plaintiffs' claims." (*See* Mot. Ex. A, at 1-2.)

Plaintiffs also complied with the Court's directive regarding Interrogatory 9 (copyright infringement) by attaching another exhaustive chart identifying 34 of Plaintiffs' registered

copyrighted works by bates number and containing a detailed description of CRC's infringement ("Copyright Chart"). (*Id.* at 11-13 & Ex. C.)

Finally, Plaintiffs complied with this Court's order with respect to Interrogatories 10 and 11 by explaining how Dilmas and Irvine acted as CRC's agents when they "emailed Symbria information to [their] personal email account(s) while employed by Symbria Rehab because [they] knew that [they were] going to later work for a company controlled and managed by John Callen and/or a company that would benefit John Callen, and that such company or companies may . . . benefit from the possession and/or use of that information." (*Id.* at 13-16.) Plaintiffs further explain how Dilmas and Irvine were linked to CRC by virtue of Dilmas being *a CRC employee* and through Irvine's work for other Callen companies, such as Joint & Neuro, and by supervising CRC's employees. (*Id.*)

Finally, Plaintiffs advised that their investigation continued and they would supplement as necessary. (*Id.* at 2-4, 13-16.) Given that written discovery was not (and is not) complete and that only one deposition had taken place, Plaintiffs had provided as much detail about CRC's misappropriation, infringement, and connections to the various Callen companies, Dilmas, and Irvine, that they possibly could at this stage of the case. Additional details are in the possession of other parties and subject to discovery in the ordinary course.

Nevertheless, on May 11, 2022, CRC complained to Plaintiffs that their amended answer to Interrogatory 3 was supposedly insufficient because the Trade Secrets Chart did not identify *each page* of the 121 documents containing a trade secret, the person who created the trade secrets inside each document (versus the entire document), and the date the trade secrets inside the documents were created (versus the document creation date). (*See* Mot. Ex. G at 1.) CRC further complained that the Employee List did not list employees that formerly worked at Symbria or

every former therapist Plaintiffs have ever employed. (*Id.*) CRC raised no issues with Plaintiffs' answers to Interrogatories 2, 9, 10, or 11. Before this issue could be resolved, on June 3, 2022, this Court ordered a stay of discovery. (Dkt. 563.)

**B.    CRC's Failure to Timely Raise its Dissatisfaction and Plaintiffs' Good Faith Efforts.**

When the Court lifted the stay five months later on November 3, 2022, it ordered that "[a]ny motions by any of the defendants as to pending discovery requests and/or previously issued judicial orders as to discovery production must be filed by 12/2/22." (Dkt. 594.) CRC then sat on its hands for a month before raising any new issue with Plaintiffs' amended answers.[1] (*See* Ex. A, Nov. 17 E-mail Chain, at 4-9.)

In particular, on December 2, the deadline for discovery motions, Defendants moved to extend this deadline until January 6, 2023, arguing that they needed more time to review recently produced documents. (Dkt. 613 at 2-3.) The Magistrate Judge granted the extension, but only as to issues related to the document productions. (Dkt. 619; Ex. B, Dec. 8, 2022 Tr. of Proceedings, at 31:15-25.) The next day, CRC emailed Plaintiffs with complaints for the first time about Plaintiffs' amended answers to Interrogatories 2 and 9. (Ex. A, Nov. 17 E-mail Chain, at 1-3.)

According to CRC, the amended answers were insufficient because Plaintiffs' Trade Secrets Chart (which identifies documents specifically by bates number) required Defendants to "dig up each of the 121 documents," and "once those documents are found, try to guess what information (if any) within those documents might be considered by one or more of the Plaintiff to constitute a trade secret." (*Id.* at 2.) CRC also complained that the Trade Secrets Chart made references to electronic documents with "hidden content," that it could not access (even though those documents were produced by Defendant Callen—not Plaintiffs—and the "hidden content"

---

[1] CRC omitted from Exhibit H to its motion the full e-mail chain reflecting this correspondence.

is easily accessed through e-discovery software).[2] *See id.* CRC further argued that some of the documents Plaintiffs identified did not actually qualify as trade secrets *on the merits* and that including them on the Trade Secrets Chart somehow violated the *discovery* order. (*Id.* at 2-3.) CRC further complained that the misappropriation descriptions were insufficient because they relied on alter ego, single business enterprise, and agency theories—again, a disputed legal issue that goes to the merits. (*Id.* at 3.) CRC also claimed *for the first time* that Plaintiffs' amended answer to Interrogatory 9 did not comply with the April 4 Order because the Copyright Chart's detailed infringement descriptions referenced other Defendants' actions and relied on agency and alter ego theories that CRC argues are legally inapplicable—another merits argument. (*Id.* at 3.)

Despite CRC's delay in raising these new issues, Plaintiffs' counsel promptly met and conferred with CRC. (Ex. D, Dec. 13 E-mail at 2.) In a good faith effort, Plaintiffs agreed to amend the Trade Secrets and Copyright Charts, in attempt to assist CRC in better understanding Plaintiffs' claims. (*Id.*; Mot. at Ex. I.) At no time during any of these communications did CRC mention that it had any issue with Plaintiffs' amended answers to Interrogatories 10 and 11.

### C. Plaintiffs' Repeated Amendments to Address CRC's Complaints.

Two weeks later, Plaintiffs served their *second* amended answers to Interrogatories 2, 3, and 9. (Mot. Ex. E.) In the amendment, for each of the 121 documents previously identified, Plaintiffs provide a description of the trade secrets therein, the trade secret category, and, for each category, the misappropriation occurring. In addition, for each document, Plaintiffs provide further details about the misappropriation, including identifying specific bates numbers showing

---

[2] CRC complains that Plaintiffs did not *re-produce* these native documents to CRC, which makes no sense. As Plaintiffs' counsel explained: "Because Callen and the MedRehab Entities produced them, you can ask them to produce them to you again or ask them how to use the technology to make the content appear. Your IT department or a hired vendor or consultant likewise should be able to help you." (Ex. C, Jan. 6 E-mail Chain, at 1.) CRC omits this correspondence from its motion.

possession of the trade secrets by certain individuals. (*Id.* at Ex. A.) The amended Chart also makes clear Plaintiffs' position that the format itself of many documents constitutes a trade secret. (*Id.*) Plaintiffs also supplemented the Copyright Chart with columns naming the copyrighted documents, classifying them by type, and additional details about infringement. (*Id.* at Ex. C.)

Nevertheless, CRC advised shortly thereafter that it planned to file a motion for discovery sanctions. (Ex. E, Jan. 4 E-mail Chain, at 3.) After a two-hour in-person conference held January 5, 2023, Plaintiffs agreed to *again* amend the Trade Secrets Chart in a good faith attempt to address CRC's complaints and avoid unnecessary motion practice.

CRC filed its sanctions motion anyway. Plaintiffs, however, continued to work with CRC in good faith, serving their *third* amended answers to Interrogatories 2, 3, and 5, which included an amended Trade Secrets Chart. (Ex. F, Jan. 24, 2023 Amended Answers, at 1-3, Ex. A.) The amended chart identifies a total of 66 discrete trade secrets, in 13 categories, providing additional information about each secret. (*See id.* at Ex. A.) Plaintiffs also provide further details about their alter-ego theory of CRC's misappropriation.[3] On February 2, CRC advised it was still unsatisfied, identifying merits-related disputes and complaining about the supposedly "hidden content" in certain documents produced by other Defendants. (Ex. G, Feb. 3 E-mail Chain at 1-3).

Plaintiffs have long since complied with this Court's April 4 order and have nonetheless continued to work in good faith to address CRC's demands for the production of information *in Defendants' possession*. The only disputes remaining involve issues of law regarding the viability

---

[3] Plaintiffs detail how CRC provides benefits to MedRehab Alliance's agents, CRC employees work for MedRehab Entities, there is a lack of corporate formalities, there is overlapping management and ownership, Callen is an agent of CRC, and CRC is the alter ego of the MedRehab Entities and Callen. (Ex. F) Plaintiffs noted that their "investigation continues" through "court-ordered alter-ego written discovery responses and depositions." (*Id.*)

of Plaintiffs' agency, alter ego, and misappropriation theories and the facts yet to be developed in discovery relating to them.

## STANDARD

"Although this Court's power to dismiss as a sanction under Rule 37 is well established, dismissal is a severe sanction that is only appropriate in extreme cases." *Newson v. Oakton Cmty. Coll.*, 2022 WL 2874801, at *3 (N.D. Ill. July 12, 2022); *see also Greyer v. Ill. Dep't of Corrections*, 933 F.3d 871, 877 (7th Cir. 2019) ("Courts must also evaluate the appropriateness of any given sanction, especially the 'draconian' sanction of dismissal with prejudice"); *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993) (stating that "the particular sanction of dismissal with prejudice or judgment is 'draconian,'" and "must be infrequently resorted to by district courts"). The Seventh Circuit expressly has stated that Rule 37(b) dismissals "should be employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing." *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

Dismissals therefore are reserved for only the most egregious instances. *See Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 782-83 (7th Cir. 2016) (relied on by CRC but finding dismissal was appropriate where plaintiff engaged in witness tampering by offering money for false testimony); *Ladien v. Astrachan*, 128 F.3d 1051, 1057 (7th Cir. 1997) (dismissal appropriate where plaintiff "on many occasions, abused the discovery process and violated the court's clearly articulated orders" and the court "repeatedly cautioned" that "his conduct was inappropriate and that it was coming dangerously close to warranting dismissal" and noting that dismissal "for a single act of violative conduct" would not be appropriate). This is not one of those instances.

## ARGUMENT

CRC's motion for sanctions should be denied for three reasons. First, Plaintiffs fully complied with this Court's order to "answer" Interrogatories 2, 3, 9, 10, and 11. Second, CRC's

motion is a procedurally improper attempt to procure a dismissal of Plaintiffs' claims on the merits before discovery is complete. Third, CRC unreasonably delayed in bringing this motion. Therefore, no sanctions are warranted under these facts, much less the draconian sanctions sought.

## I.        **Plaintiffs' Answers Complied with the Court's April 4 Discovery Order.**

CRC's argument that Plaintiffs have violated the April 4 order rests on an erroneous premise. CRC argues that Plaintiffs have violated this Court's April 4 order by not providing sufficiently specific identifications of meritorious trade secrets, by not providing legally adequate examples of CRC's misappropriation and infringement, and by not providing a legally sound factual basis supporting their agency claims for Dilmas and Irvine. However, this Court ordered only that Plaintiffs "answer" the previously objected to interrogatories to describe how Chicago Rehab [improperly copied or used Plaintiffs' Registered Copyright Work,]" and help CRC to "understand the bases for plaintiffs' claims," and Plaintiffs did this. (Mot. Ex. A, at 1-4.)

### A.        **Plaintiffs' Trade Secrets and Copyright Charts Are Sufficiently Detailed at this Early Stage in the Litigation.**

To be sure, Plaintiffs have provided sufficiently detailed answers to CRC's questions about the trade secrets it misappropriated and copyrights it infringed. On this subject, the court's reasoning *PeopleFlo Manufacturing, Inc. v. Sundyne* is instructive. 2022 WL 1450382, at *4 (N.D. Ill. May 9, 2022). There, the Court issued an order requiring the plaintiff to identify its trade secrets, the plaintiff provided supplemental answers, and the defendants claimed the supplemental responses were insufficient and moved for sanctions. *See id.* *3. Denying the motion, the court observed that the plaintiff had provided answers as the court ordered and although the defendant "may not like [the plaintiff's] answers, . . . they did receive them." *Id.* at *4.

The court reasoned that these sorts of clashes are typical in trade secrets cases and are not characteristic of sanctionable conduct:

8

> In trade secret cases "parties often clash, and courts disagree" about when and to what extent trade secrets must be identified. . . . A plaintiff may attempt to delay articulating with particularity its trade secrets to avoid limiting the scope of its claim, while a defendant may seek an early, detailed identification to pinpoint the trade secret information being asserted. . . . The parties here are engaged in this clash, and through written discovery and motions to compel, [defendants] have sought, and pursuant to court orders received, supplemental responses from [plaintiff] with more specificity regarding the subject trade secrets. . . . While [the defendants] are not satisfied with the responses secured, they have not demonstrated that [the plaintiff] disobeyed any court orders in violation of Rule 37(b)(2)(A).

*Id.* at *3 (cleaned up).

The court in *PeopleFlo* relied in part on *TNS Media Research, LLC v. Tivo Research & Analytics, Inc*., 629 Fed. Appx. 916 (Fed. Cir. 2015), where the Federal Circuit rejected a similar request for sanctions. There, the plaintiff in identifying its trade secrets "merely listed several hundred documents, without explaining how these documents demonstrated the existence of trade secrets." *Id.* at 928. The court found "no indication that [the plaintiff] purposefully shirked its discovery obligations" or otherwise violated an order by not narrowing the description of its trade secrets until after discovery concluded. *Id.* at 929-30; *see Nationwide Sales & Servs., Inc. v. Envirocare Techs. Int'l, Ltd*., 2018 WL 2436969, at *7 (E.D.N.Y. May 30, 2018) (explaining the need to "exercise . . . caution before . . . impos[ing] the extreme sanction of dismissal based on a failure to adequately identify trade secrets"); *McCarthy v. AT&T Mobility Servs. LLC*, 2018 WL 3831530, at *3-4 (N.D. Ill. Aug. 10, 2018) (finding the record did not support a finding of willfulness or bad faith on plaintiff's part to warrant dismissal and that an award of fees and costs was also inappropriate because plaintiff had substantially complied with the court's order).

Here, as in *PeopleFlo* and *TNS*, Plaintiffs have complied with this Court's order by providing the detailed Trade Secrets Chart, Employee List, and Copyright Chart. Indeed, the charts identify the specific trade secrets (now by category and including specific trade secret items inside

particular documents), identify each Registered Copyrighted Work, describe Plaintiffs' theories of how CRC misappropriated those trade secrets and copied Plaintiffs' Registered and Copyrighted Work, contain information on the creation and authorship of the trade secrets, and include the bates numbers of the relevant evidence of all of the above. Moreover, in May, Plaintiffs "answered" Interrogatories 10 and 11 instead of relying on objections, just as this Court ordered. Even a brief perusal of Plaintiffs' answers demonstrate that Plaintiffs have complied with this Court's order and indeed gone above and beyond in making a concerted and good faith effort to address CRC's repeated demands for more detail (despite the fact that much of the information is not in Plaintiffs' possession and has not yet been revealed in discovery). Further details about the nature of the misappropriation and Plaintiffs' alter ego and agency theories is currently in the possession of Defendants and their representatives and employees whose depositions have yet to take place. *See LKQ Corp. v. Gen. Motors Co*., 2022 WL 14634800, at *4 (N.D. Ill. Oct. 25, 2022) (denying Rule 37(b) motion for sanctions and explaining the court's "Order does not require [the defendant] to produce documents it cannot find").

**B.     Plaintiffs' Have Not Violated this Court's Order Based on Confidentiality Designations, Technology Difficulties, or Reliance on Actions of CRC Employees Occurring Prior to CRC's Formation.**

Sanctions are not appropriate here because Plaintiffs fully complied with this Court's order to simply "answer" the previously objected to responses, describe how Chicago Rehab [improperly copied or used Plaintiffs' Registered Copyright Work,]" and help CRC to "understand the bases for plaintiffs' claims." *Lynchval Sys., Inc. v. Chi. Consulting Actuaries, Inc.,* 1996 WL 735586, at *7 (N.D. Ill. Dec. 19, 1996) ("Rule 37(b)(2) only authorizes a court to impose a sanction if the party fails to comply with a discovery order."); (Mot. Ex. A, at 1-4.)

Despite this, CRC argues for sanctions stating, that "the fact that Plaintiffs do not even mark the Trade Secret Chart as confidential," is somehow dispositive of whether the Chart

contains trade secrets as a matter of law. (Mot. at 8.) Of course, whether a document or information is labeled confidential for the purposes of complying with the confidentiality order that governs this litigation is not determinative of its trade secret status.[4] (*See* Dkt. 51 at § 3(a) ("Applying the marking 'CONFIDENTIAL . . .' to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order"). After all, the Trade Secrets Chart is a summary and does not comprise the many thousands of pages of information that CRC's agents misappropriated from Plaintiffs.

CRC next argues that Plaintiffs violated this Court's order by referencing documents that defendant Callen and the MedRehab Entities produced that supposedly contain "hidden content." (Mot. at 9-10.) However, Plaintiffs have repeatedly explained to CRC that this hidden content is *easily viewable* by using ubiquitous e-discovery software and suggested that CRC's counsel work with their IT staff, an e-discovery vendor, or Callen himself to address any remaining confusion. (Ex. C, Jan. 6 E-mail Chain, at 1; Ex. G, Feb. 3 E-mail Chain at 1.) These are very reasonable solutions for documents produced by other Defendants.[5]

Also meritless are CRC's arguments that the Trade Secrets and Copyright Charts are insufficient because they reference instances of misappropriation and infringement by CRC employees who were "leased" to other entities and occurring prior to CRC's formation are incorrect because those merits-based arguments fail under the law. (Mot. at 13-18.) The notion that CRC should be absolved from liability because of the legal fiction that it "leased" its

---

[4] In any event, Plaintiffs have since explained what information in the Second Amended Trade Secrets Chart—which did not include a document production of the trade secrets—are confidential and should not be published. (Ex. G, Feb. 3 E-mail Chain at 1.)

[5] CRC's counsel, like all counsel practicing in this court, are obligated to have a basic understanding of relevant technology. *See* N.D. Ill. L.R. 83.50; ABA Mod. Rules Prof. Cond. § 1.1 cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology[.]"); Ill. RPC Rule 1.1 cmt. 8 (same).

employees to other defendants is a merits dispute, inappropriate to raise in its discovery motion. CRC's reliance on *Behrens v. California Cartage Co.* also is misplaced. That case addressed liability for payment of compensation benefits under the statutory language of the Workers Compensation Act and analyzed at summary judgment the "right-to-control" test to determine issues of *respondeat superior* of a staffing agency. *Behrens,* 870 N.E.2d at 850-52. Contrary to what CRC assumes, the case does not establish a bright-line rule that a party may not be liable for the actions of individuals "leased" to another company and did not address trade secret or copyright liability in the context of the sufficiency of discovery responses. *See id.*

Similarly, CRC provides no support for its (merits) claim that it cannot be liable for misappropriation and infringement prior to the formation of CRC as a limited liability company. The statutory definition of misappropriation is not limited to the moment of first misappropriation and courts have repeatedly found misappropriation where an individual sent information from their work to personal e-mail accounts *before they began working for the new employer*. *See* 18 U.S.C. § 1839(5)(A)-(B) ("[T]he term 'misappropriation' means-- (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent . . ."); *Moss Holdings*, 2020 WL 1081730, at *7; *Segerdahl*, 2019 WL 77426, at *3.

Likewise, all that needs to be shown for a copyright infringement claim is access to the copyrighted work and that the accused work is substantially similar to the copyrighted work. *See JCW Invs., Inc.*, 482 F.3d at 915; *Jt. Comm'n on Accreditation of Healthcare Org.*, 2017 WL 3895593, at *2. The Copyright Chart sets forth how CRC employees had access to Symbria's Registered Copyrighted Works through Dilmas and Irvine—who obtained those documents while employed by Symbria—and that CRC's employees later used the works to create similar

documents. (*See* Mot. at Ex. C to Ex. E). Discovery—which is still underway—may unearth further details, and Plaintiffs will supplement accordingly.

## II.   A Motion for Discovery Sanctions is Not the Appropriate Vehicle to Resolve CRC's Arguments About Plaintiffs' Claims on the Merits.

As explained above, Plaintiffs have not violated this Court's April 4 order. As such, there is no reasonable discovery dispute and only CRC's request to engage in a merits dispute remains. This motion therefore also should be denied as a procedurally improper summary judgment motion in disguise. It is well established—especially in the context of a trade secrets dispute—that "a sanctions motion is not the proper vehicle to resolve the substantive merits of the case—including what information, if any, relating to [Plaintiffs'] asserted trade secrets is protectible." *PeopleFlo*, 2022 WL 1450382, at *4. Yet CRC's motion is laden with substantive arguments about Plaintiffs' ability to meet its evidentiary burden at trial.

For example, CRC claims that Plaintiffs violated this Court's order because contents of the amended Trade Secrets and Copyright Charts do not contain the legal elements necessary to sustain Plaintiffs' claim. (Mot. at 8-14, 16-18.) CRC further argues that, because some of the trade secrets Plaintiffs identified "facially *cannot* constitute trade secrets" for various asserted reasons, dismissal is appropriate. (*Id.* at 8-10.) CRC also seeks dismissal because (i) Plaintiffs' misappropriation descriptions supposedly do not demonstrate "use" in CRC's business or disclosure (which CRC claims is required); (ii) the use by CRC employees leased to other companies supposedly does not constitute "use" as a matter of law; and (iii) Plaintiffs' reliance on alter ego and agency theories is supposedly insufficient as a matter of law. (*Id.* at 12-13, 16-18.)[6]

---

[6] "Misappropriation of trade secrets" has a statutory definition that is much broader than simply "use," including (1) acquisition by a person who has reason to know that the information was acquired by unlawful means, (2) disclosure, (3) acquisition by improper means, and (4) when at the time of disclosure or use, the defendant knew or had reason to know that the information was derived using improper means, or acquired

CRC further argues that Plaintiffs' answers are in bad faith because the amended Copyright Chart relies on the actions of CRC employees "leased" to other companies, which CRC apparently contends is not relevant to its liability, and because CRC takes issue with the legal soundness of Plaintiffs' agency allegations regarding Dilmas and Irvine. (*Id.* at 14-15.) These issues—which Plaintiffs hotly dispute—are not properly resolved in the context of a discovery dispute.

The district court's reasoning in *PeopleFlo* again is illustrative. There, the defendants filed a motion for sanctions using the same arguments advanced by CRC—namely that the plaintiff had failed to comply with a court order requiring it to identify its trade secrets because its identifications remained unclear and the trade secrets identified were allegedly not protectible under the law (being based on publicly available information). 2022 WL 1450382, at *4. The court denied the defendants' motion, explaining that the case was "still in the fact discovery stage," and that "key depositions on these issues have not yet occurred." *Id.* The court emphasized that it would be "premature" and "inappropriate" in response to a sanctions motions to "wade into the merits as to the protectability of the trade secrets." *Id.*

The same reasoning applies here:  CRC's motion seeking the sanction of dismissal based on the merits of Plaintiffs' articulations of misappropriation and infringement in its Trade Secrets and Copyright Charts is both premature and inappropriate. CRC's cited cases are not to the contrary. Instead of relying on cases addressing Rule 37(b), CRC relies on cases arising in the context of summary judgment and other merits-related motions.[7]

---

under circumstances giving rise to a duty to protect its secrecy, or derived from a person who had a duty to the plaintiff to maintain secrecy. 18 U.S.C. § 1839(5)(A)-(B); 765 ILCS 1065/2(b)(1)-(2).

[7] *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 (7th Cir. 1992) (appeal of judgment notwithstanding the verdict); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002) (summary judgment); *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, No. 18 CV 8420, 2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) (summary judgment); *Behrens v. Ca. Cartage Co., Inc.*, 373 Ill. App. 3d 860 (Ill. App. Ct. 2007) (summary judgment). Plaintiffs need not address the merits at this premature juncture in responding to a discovery sanctions motion before party depositions have even begun. *See PeopleFlo*, 2022

Suffice it to say that Plaintiffs' vehemently disagree with CRC's various merits challenges to Plaintiffs' misappropriation, copyright, agency, and alter ego claims, and its characterizations of the law.[8] But regardless a motion for discovery sanctions is not the place to resolve these issues. Instead, this Court should reject CRC's attempt to resolve merits disputes through a discovery motion, and to deny CRC's motion.

## III.    CRC Waived Its Right to Bring a Motion for Sanctions.

Even if CRC's motion was directed to an actual discovery dispute (which it is not), it would be barred as not timely raised. Where a party unreasonably delays in bringing a motion for discovery sanctions, the motion should be denied. *See Brandt v. Vulcan, Inc*., 30 F.3d 752, 756 (7th Cir. 1994) (affirming denial of sanctions motion in part because of unreasonable delay by the movant in seeking the sanctions). The Seventh Circuit has stressed that a party in possession of

---

WL 1450382, at *4; *M.H. Eby, Inc. v. Timpte Indus., Inc.*, No. CV 19-386, 2019 WL 6910153, at *8 (E.D. Pa. 2019) (declining to address whether alleged "know-how" qualified as trade secret because to rule on such issues "at an early stage . . . would require the court to wade into the substantive merits of the parties' dispute").

[8] For example, on what may constitute a trade secret, *see Master Tech Prods., Inc. v. Prism Enters., Inc*., No. 00 C 4599, 2002 WL 475192, *5 (N.D. Ill. Mar. 27, 2002) (finding a trade secret "may include a compilation of confidential business and financial information"). On trade secret misappropriation, *see, e.g., Moss Holdings Co. v. Fuller,* No. 20-CV-01043, 2020 WL 1081730, *7 (N.D. Ill. Mar. 6, 2020) (finding misappropriation when employees sent non-public client and project information to their personal Gmail accounts); *Segerdahl Corp. v. Feruzza,* No. 17-CV-3015, 2019 WL 77426, *3 (N.D. Ill. Jan. 2, 2019) (denying motion to dismiss where plaintiff alleged that defendant sent trade secret documents to his personal email). On copyright infringement, *see JCW Invs., Inc. v. Novelty, Inc*., 482 F.3d 910, 915 (7th Cir. 2007) (explaining copying can be shown through direct evidence of copying or indirect evidence "where [the individual] had access to the copyrighted work and the accused work is substantially similar to the copyrighted work"); *Jt. Comm'n on Accreditation of Healthcare Org. v. Fortis Bus. Media LLC*, No. 14 C 10225, 2017 WL 3895593, *2 (N.D. Ill. Sept. 6, 2017) (explaining a plaintiff can establish copying indirectly where the defendants had "the opportunity to copy the original (often called 'access') and that two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original"). With respect to agency, *see Sperl v. Henry*, 124 N.E.3d 936, 944-45 (Ill. 2018) (multiple principals can be held equally or simultaneously liable for the act of a single agent); *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 776 (N.D. Ill. 2016) (agents can serve multiple principals, even competing ones); *Freeman v. Augustine's, Inc*., 360 N.E.2d 1245, 1248 (Ill. App. Ct. 1977) (analyzing whether an employee is truly leased to another organization and stating "the loaned employee relationship must generally be of a temporary nature. To speak of a 'permanently loaned employee' is self-contradictory").

information sufficient to assess whether discovery responses are complete cannot sit on its hands for months and must bring any issues to the court's attention in a timely fashion. *See id.* at 756-57.

But that is what CRC did here. When Defendants moved to extend the December 2 deadline for filing motions as to pending discovery requests and existing discovery orders, they did so *only* with respect to issues arising from Plaintiffs' document productions from May and November 2022. They claimed that they needed a "full opportunity to identify deficiencies in the production or to meet and confer with Plaintiffs about resolving them without court intervention." (Dkt. 613 at 2-3.) At a hearing on this motion, the Magistrate Judge noted: "You missed the December 2nd deadline, but I'm not sure why that happened, given the circumstance and the import of the issue." (Ex. B, Dec. 8, 2022 Tr. of Proceedings, at 22:2-4.) The Court went on to grant the extension in part stating, "The Court will permit Defendants to file motions as to pending discovery requests and/or previously issued orders as to discovery productions through 1/6/23. However, depending on the substance of the motions, the Court may not consider the motions timely (based on the factors the Court explained on record)." (Dkt. 619.) The Court made clear it would *not* be inclined to take on motions that "could have been raised without reviewing the documents"—such as written responses to interrogatories. (Ex. B, Dec. 8, 2022 Tr. of Proceedings, at 31:15-25.)

Accordingly, this Court granted an extension until January 6 so Defendants had an opportunity to review Plaintiffs' document productions, not to allow CRC to belatedly raise issues with Plaintiffs' six-month-old amended answers to Interrogatories 2, 3, 9, 10, and 11. Any discovery motion relating to those amended answers must have been brought by December 2.

Despite the fact that it now claims to be unsatisfied with Plaintiffs' May 2022 amended answer to Interrogatory 3, CRC did not raise the issue after the discovery stay was lifted or bring its motion for sanctions by December 2. (*See* Mot. Ex. G.) In fact, it was not until December 9—

16

a week after the deadline—that CRC complained in writing of Plaintiffs' amended answers to Interrogatories 2 and 9—without mentioning any remaining issues with Interrogatory 3. (*See* Ex. A, Nov. 17 E-mail Chain, at 1-3.) Moreover, CRC has *never* previously complained about Plaintiffs' amended answers to Interrogatories 10 and 11.[9]

In not abiding by this Court's deadline, CRC unreasonably delayed in bringing its motion. *See U.S. v. Stinson*, No. 614CV1534, 2016 WL 8488241, at *5 (M.D. Fla. Nov. 22, 2016) (finding motion for sanctions untimely when filed after the discovery deadline to bring the issue to the Court's attention); *Barnes v. City of Chi.*, 2000 WL 1745180, at *3 (N.D. Ill. Nov. 27, 2000) (finding plaintiff waived right to bring Rule 37 motion due to her own two-year inaction where plaintiff "could have and should have taken action earlier than now"); *Walrus Brands, LLC v. Peaches Uniforms, Inc.*, No. 12 C 4892, 2018 WL 11453554, at *3 (N.D. Ill. July 9, 2018) (finding motion for sanctions was untimely where movant "sat on its rights"). This gives the Court yet another reason to deny CRC's motion for sanctions.

## IV.    <u>The Severe Sanctions of Dismissal and Prohibition of Evidence Are Not Warranted.</u>

CRC has not come close to meeting the standard for sanctions here, much less the ultimate sanction of dismissal. Since this Court's April 4 order, Plaintiffs have acted promptly in making substantial additions and supplementations to the Trade Secrets and Copyright Charts. Discovery is still underway, no party depositions have taken place, and Plaintiffs have still provided CRC

---

[9] Although CRC argued in a December 9 e-mail that Plaintiffs' amended answers to Interrogatories 2 and 9—namely the Trade Secrets and Copyright Charts—were insufficient in part because they "merely state that Christos Dilmas or Christine Irvine emailed the document to themselves while employed by Symbria[]" and claim that "Irvine (who is no longer even a Defendant in this action), or Dilmas emailed certain of the [copyrighted] Works to themselves while they were employed by Symbria Rehab[,]" CRC did not raise any issues with Plaintiffs' written responses to Interrogatories 10 and 11 before bringing this motion. (*See* Ex. A, Nov. 17 E-mail Chain, at 1-3.) Contrary to CRC's assertions, Plaintiffs did *not* discuss amending Interrogatories 10 or 11, but only agreed to provide greater detail in the Trade Secrets and Copyright Charts relating to agency generally. Thus, in no e-mails and at no meet-and-confer did CRC raise concerns relating to Interrogatories 10 and 11.

with ample information. *See Nationwide Mut. Ins. Co. v. Total Prop. Care Inc*., 2018 WL 2356214, at *3 (N.D. Ind. May 24, 2018) (finding preclusion of evidence would be premature where additional discovery could be had); *Liberty Mut. Ins. Co. v. Ecowater Sys., Inc*., 2004 WL 1073687, at *1-2 (N.D. Ill. May 12, 2004) (noting the sanction of preclusion of evidence is unwarranted where other discovery going to same issue was available). Sanctions—particularly the sanction of dismissal—are inappropriate under such circumstances. *See Barnhill*, 11 F.3d at 1368 ("[D]ismissal . . . is such a serious sanction that it should not be invoked without first considering what effect—if any—the challenged conduct has had on the course of the litigation").

CRC's request in the alternative to bar Plaintiffs from providing evidence that CRC misappropriated trade secrets is also not appropriate. (Mot. at 19-20.) No less than a dismissal, this would effectively doom Plaintiffs' trade secrets claims. Courts are hesitant to impose such sanctions as "the interests of justice are best served by resolving cases on their merits." *Lair for Est. of Lair v. Reyes*, 2020 WL 9718813, at *14 (S.D. Ill. Mar. 17, 2020) (refusing to prohibit defendants from presenting evidence or arguments at trial where it would be outcome determinative). CRC cites no case that would warrant sanctions under the circumstances here. Unlike in *Langley,* Plaintiffs have not failed to produce evidence after admonition. *See Langley by Langley v. Union Elec. Co*., 107 F.3d 510, 513-16 (7th Cir. 1997) (barring evidence after plaintiff was ordered to produce evidence on threat of sanctions, plaintiff failed to do so, and plaintiff provided no explanation for its failure). Accordingly, this Court should deny CRC's request for any type of sanctions and deny its motion in its entirety.

## CONCLUSION

Plaintiffs have not violated this Court's April 4 order. CRC's motion for sanctions seeking dismissal is unfounded, untimely, and an inappropriate use of Rule 37(b). For all of the forgoing reasons, the Court should deny CRC's motion for discovery sanctions.

DATED: February 10, 2023

Respectfully submitted,

SYMBRIA, INC., SYMBRIA REHAB, INC.,
ALLIANCE REHAB OF CONNECTICUT,
LLC, and ALLIANCE REHAB HVA, L.L.C.,
GREATBANC TRUST COMPANY, IN ITS
CAPACITY AS TRUSTEE OF THE
SYMBRIA, INC. EMPLOYEE STOCK
OWNERSHIP TRUST, and THE SYMBRIA,
INC. EMPLOYEE STOCK OWNERSHIP
TRUST


By:    /s/ Matthew J. O'Hara
          One of Their Attorneys

Matthew J. O'Hara (Ill. ARDC No. 6237795)
Terrence J. Sheahan (Ill. ARDC No. 6257646)
Gia F. Colunga (Ill. ARDC No. 6282679)
Katie D. Krysan (Ill. ARDC No. 6323797)
Lillian G. Lamphere (Ill. ARDC No. 6340044)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
mohara@freeborn.com
tsheahan@freeborn.com
gcolunga@freeborn.com
kkrysan@freeborn.com
llamphere@freeborn.com

Jason P. Stearns (Fla. Bar No. 059550)
FREEBORN & PETERS LLP
201 North Franklin Street, Suite 3550
Tampa, Florida 33602
(813) 488-2920
jstearns@freeborn.com